## THE NEW YORK, NEW HAVEN AND HARTFORD RAIL-ROAD COMPANY vs. EDWARD E. STEVENS.

Third Judicial District, Bridgeport, April Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The procedure prescribed by Public Acts of 1905, Chap. 244, for obtaining the consent of the municipal authorities to the location of a street railway, contemplates a plan of location previously approved by the directors of the company; but evidence that they voted to request the municipal authorities to accept certain plans then in preparation by the company's engineers, and afterward authorized the execution of a contract for the building of the road on the route indicated on the map or plan submitted to such authorities, is sufficient to show their approval of the location thus designated.

Under General Statutes, § 3834, authorizing any party to "any proceeding relating to street railways" brought before the railroad commissioners, to appeal from an adverse order or decision made by them to the Superior Court, there is no distinction, as to the right of appeal, between a proceeding brought by a railway company in furtherance of an exercise of the power of eminent domain granted to all such companies by a general statute, and a proceeding based upon a like power granted to the company by its charter.

The "location" of a railway by a street-railway company whose charter does not fully prescribe the precise location, is the definite and final selection and demarcation of its route by its board of directors. While it must be made within the limits fixed by its franchise, these limits will be liberally construed to uphold their action, and it is enough if they are substantially observed.

Where the route of a street railway is required by its charter to be "located" by the company, orders of the railroad commissioners approving the location made by the company and authorizing the

taking of private land embraced therein, are subject to appeal by an aggrieved landowner; and since such appeals operate as a *supersedeas,* their pendency is a ground for the dismissal of further proceedings instituted by the railway company for the purpose of taking such land.

Argued April 22d—decided June 11th, 1908.

APPLICATION to the *Hon. Alberto T. Roraback,* a judge of the Superior Court, for the appointment of appraisers to estimate the compensation to be paid to the defendant for land taken for the uses of a street railway. A motion to dismiss the application, and then a demurrer to it, having been successively filed and overruled, the case was heard on the merits, and a judgment rendered appointing appraisers, from which this appeal was taken. *Error.*

*Verrenice Munger,* for the appellant (defendant).

*Benjamin I. Spock,* for the appellee (plaintiff).

BALDWIN, C. J.    The Woodbury and Waterbury Street Railway Company was incorporated in 1903, with power "to locate, construct, and finally complete a street railway upon" a route particularly described in the charter, and further "to construct, maintain, and operate a line of railway upon any private property which it has or may acquire near to the route mentioned herein." The route described was in part from a point "about one thousand feet southerly from the dam at Quassapaug pond," in the highway leading from Woodbury through Middlebury to Southbury, "Northerly along said highway to the southerly end of Quassapaug pond in said Middlebury; thence northeasterly on private property, or in highway outside of the present traveled path, to the junction of the roads near the Henry S. Wheeler place." 14 Special Laws, p. 316. In April, 1905, the directors of the company voted to apply to the selectmen of Middlebury for the acceptance of certain plans which were in preparation by the company's engineers, showing the proposed location of the railway in that town.

The plans were afterward completed, and the application made in October, 1905. They showed, by a proper map, a proposed location crossing the highway above described, from west to east, by an overhead bridge from certain private property, at a point about three hundred feet southerly from the southerly end of Quassapaug Pond, and covering nine hundredths of an acre of a house-lot belonging to the defendant. This lot was bounded on three sides by the highway, and on the south by land of one Kelley, which was included in the proposed location. The selectmen, in November, 1905, approved the plans and location thus presented to them, subject to certain modifications not material in this case.

At the date of the application it was the general law that no company chartered for the purpose of building street railways could proceed to construct a railway in any town until it had presented to the selectmen a plan showing the proposed location of its tracks in the highways as to grade and the center line of said highways, who should "thereupon, after public notice, proceed to a hearing of all persons interested therein"; nor until the selectmen had adopted such plan, or adopted it with modifications, or it had been "approved on appeal by the railroad commissioners or the Superior Court, as provided in sections 3832, 3833, and 3834 of the general statutes." Public Acts of 1905, p. 448, Chap. 244, § 1.

This mode of procedure undoubtedly contemplates a plan of location of the railroad which has been previously approved by the directors. The vote of the directors of the Woodbury and Waterbury Street Railway Company was only an approval of plans to be thereafter completed; but it does not appear that, in respect to that part of the route brought in question in this case, any change was subsequently made, and does appear that in December, 1906, a contract was executed by their authority for the construction of the railway "on private right of way and highway through the town of Middlebury . . . as indicated on map," which map appears to be that accompany-

ing the plans submitted to the selectmen. Under these circumstances it sufficiently appears that the directors had approved the location indicated in the map mentioned.

The franchises and property of the Woodbury and Waterbury Street Railway Company became vested in the plaintiff on May 31st, 1907. Among these franchises was that of exercising the power of eminent domain. Should it require any land upon which to construct its railway and be unable to agree with the owner as to his damages, it could apply to a judge of the Superior Court for the appointment of appraisers. The Woodbury and Waterbury Street Railway Company endeavored and was unable to agree with the defendant as to his damages.

On May 31st, 1907, the plaintiff also acquired by merger the franchises and property of the Consolidated Railway Company. One of those franchises was ": the right to take, with the approval of the railroad commissioners, in the manner provided in section 3687 of the general statutes, real estate . . . for the purpose of constructing or improving any railroad or railway which it shall have the authority or right to construct or operate." 14. Special Laws, p. 714, § 6.

On October 7th, 1907, the plaintiff applied to the railroad commissioners, counting on its succession to the Consolidated Railway Company and the Woodbury and Waterbury Street Railway Company, for their approval of its taking, for the purpose of constructing its railway in Middlebury, a parcel of land in that town belonging to the defendant and particularly described, containing about twenty-two hundredths of an acre. This application did not state that any location had been made on this land. In fact, the parcel described included the nine hundredths of an acre on which the location presented to the selectmen had been made in 1905, and some additional and contiguous land.

On October 30th, 1907, the directors of the plaintiff passed a vote " that this company hereby takes, subject to the approval of the Railroad Commissioners of Con-

necticut, for the purpose of constructing its railroad or railway in and through the town of Middlebury," the parcel of land thus described. On November 12th, 1907, the plaintiff filed a new application with the railroad commissioners, stating that it had laid out its railroad over the defendant's land in Middlebury, and praying for the approval of such layout. On December 27th, 1907, the commissioners found that the "proposed location of said street railway" was proper, and approved "said layout of said railway on said private land." The plaintiff then filed another petition before them, reciting these previous proceedings, including the vote of October 30th, and asking their approval of the taking of the land described in its original petition of October 7th. The approval was given on January 8th, 1908.

The defendant was represented at these proceedings before the railroad commissioners and on January 24th, 1908, took, and afterward perfected by due service, what purported to be an appeal from each of their orders of approval to the Superior Court; and these two appeals, or causes purporting to be such, are still pending, undetermined. By General Statutes, § 3834, "any party to any proceeding relating to street railways brought before said commissioners upon either original application or by appeal, aggrieved by the decision or order of said commissioners thereon, may appeal therefrom to the superior court, in the same manner as is provided in the case of appeals taken under the provisions of § 3747, and with like effect." Any appeal taken under § 3747 is "a *supersedeas* of the order appealed from until the final action of the court thereon."

The defendant was a party to the proceedings resulting in the orders of approval of which he complains. They were proceedings relating solely to the location and construction of a street railway. There is no merit in the claim that § 3834 refers only to such proceedings as may be brought by every street railway under the general laws, and does not apply to proceedings brought in furtherance of the exercise of the power of eminent domain, which has

not been granted to all of them. The word "any" is too comprehensive to receive so narrow a construction. See *Stafford Springs Street Ry. Co.* v. *Middle River Mfg. Co.*, 80 Conn. 37, 41, 66 Atl. 775.

It is contended that the plaintiff, under the Woodbury and Waterbury Street Railway Company charter, was empowered to take land outside of a highway by condemnation proceedings without having made any location upon it; and so that it was unnecessary to ask for the approval of its location over the land now in question, either by the selectmen or the railroad commissioners.

The "route" described in that charter was partly over private land. Whether the "line of railway upon any private property which it has or may acquire near to the route mentioned," which the company was further authorized to construct and operate, meant anything more than a spur track we need not determine. The land which it is sought to acquire from the defendant is desired for the purpose of facilitating the construction of its railway on its main route. That route was, by the terms of the charter, to be "located" by the company. The location of a railway by a street-railway company, whose charter does not itself fully prescribe the precise location, is the definite and final selection and demarcation of its route by its board of directors. While it must be made within the limits fixed by its franchise, these limits will be liberally construed to uphold their action, and it is enough if they are substantially observed.

So far, therefore, as the original route is concerned, the predecessor in title of this plaintiff made a definite and final location upon the defendant's land. Thereafter the main line of the railway could not be constructed and operated on any other route unless by virtue of new proceedings.

It follows that General Statutes, § 3834, gave the defendant the remedy which he has pursued by appeal to the Superior Court from each of the final orders of the railroad commissioners. The approval by the commissioners of the location on, and the taking of, the defendant's land, therefore, under General Statutes, § 3747, became, for the time,

of no binding force, as soon as the appeals were perfected.

In the case at bar, the defendant moved before the judge of the Superior Court that the proceedings be dismissed on account of the *supersedeas* wrought by the appeals which he had taken. This motion should have been granted.

There is error, and the cause is remanded to the judge of the Superior Court with directions to dismiss the application.

In this opinion the other judges concurred.