## Edward E. Stevens *vs.* The New York, New Haven and Hartford Railroad Company.

Third Judicial District, Bridgeport, October Term, 1910.
Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

A street-railway company in April, 1905, adopted a definite layout and location of its railway, which included about one tenth of an acre of the south end of the plaintiff's house-lot, and built and operated its road in conformity thereto. No approval of this layout by the railroad commissioners was ever requested or given, nor did the directors of the company ever vote to take, nor did they otherwise seek to condemn, any of the plaintiff's land except as hereinafter stated. In October, 1907, without voting to extend or enlarge the original location of its road, the directors of the company voted to take twenty-two hundredths of an acre of the plaintiff's land, which in fact included the aforesaid one tenth, applied to the railroad commissioners to approve a layout of the railway over such land and also the taking of the land for railway purposes, and obtained their approval accordingly. Upon the plaintiff's appeal to the Superior Court the railway company did not contend that it was entitled to have the orders of the railroad commissioners confirmed as applicable to the twenty-two hundredths of an acre, but insisted that they were legal and valid as approvals of the location

upon, and the taking of, the one tenth of an acre. *Held* that this contention was properly overruled: that a decision that it was necessary and proper to take twenty-two hundredths of an acre was by no means, and as matter of law, a decision that a lesser amount would be sufficient for the purpose, even had the railroad commissioners been expressly asked to approve the taking of the smaller quantity; and that inasmuch as the defendant itself had found the smaller quantity insufficient and had never voted to take it, the railroad commissioners might well have denied the application had it sought their approval of a taking of that amount.

The charter of a street-railway company, after describing the highway route upon which the railway might be constructed, "further authorized and empowered" the company to build "upon any private property which it has or may acquire near to the route mentioned herein." *Held* that a location of the road over private property, which shortened the distance several hundred feet and was at no point more than two hundred and fifty feet from the highway, was authorized by the charter, notwithstanding it might become necessary to "acquire" such property by condemnation proceedings, as the company was empowered to do by its charter.

Argued October 26th—decided December 16th, 1910.

APPEALS by the plaintiff from orders of the railroad commissioners approving, first, an alleged location and layout of the defendant's railway over his land, and second, the appropriation of his land for the construction of its railway, taken to and tried together by the Superior Court in New Haven County, *Burpee, J.;* facts found and judgment rendered disaffirming and setting aside the orders of the railroad commissioners, from which the defendant appealed. *No error.*

*Benjamin I. Spock,* for the appellant (defendant).

*Verrenice Munger,* for the appellee (plaintiff).

HALL, C. J. The facts regarding the questions presented by the plaintiff's two appeals to this court are substantially those stated in the opinion in *New York, N. H. & H. R. Co.* v. *Stevens,* 81 Conn. 16, 69 Atl. 1052, and are as follows:—

The charter of the Woodbury and Waterbury Street Railway Company, one of the defendant's predecessors, after empowering it to construct a street railway upon a described route, principally in the highway, contained this provision: "and said company is hereby further authorized and empowered to construct, maintain, and operate a line of railway upon any private property which it has or may acquire near to the route mentioned herein." 14 Special Laws, p. 316.

Section 9 of its charter empowered said street-railway company to exercise the right of eminent domain, when it should require any land upon which to construct said railway.

In April, 1905, the directors of said company adopted a location and layout of its railway in the town of Middlebury, which included about nine hundredths of an acre of the southerly side of the plaintiff's house-lot, which is bounded on three sides by a highway, and on the south by a strip of land included in said location and acquired by said railway company from one Kelly for the purpose of constructing its said railway over private land for the distance of about two hundred and thirty feet. The route or middle line of such location was wholly upon the land of said Kelly. The directors of said company caused a map to be prepared of the location so adopted by them, a part of which map is attached to the finding before us as Exhibit F, and voted to apply to the selectmen for their approval of the same as required by law; and the selectmen in November, 1905, approved of the plans and location so adopted.

These proceedings constituted a definite and final selection and demarcation by the directors of the company of its route, as indicated on said map and plan; *New York, N. H. & H. R. Co.* v. *Stevens*, 81 Conn. 16, 19, 69 Atl. 1052; and in accordance therewith the defendant has fully completed the construction of, and

is now operating, said railway, but wholly upon said land so acquired of said Kelly.

Neither the directors of the Woodbury and Waterbury Street Railway Company, nor any of its successors, have ever voted to take the nine hundredths of an acre of the plaintiff's land shown in the location so adopted and approved; nor have they ever asked the railroad commissioners to approve of the taking of said nine hundredths of an acre; nor have they taken any steps under § 3687 of the General Statutes for the condemnation of said nine hundredths of an acre, except that in 1907, as hereinafter stated, they voted to take, and asked the railroad commissioners to approve the taking of, and applied under § 3687 for the appointment of appraisers to assess the damages from the taking of, twenty-two hundredths of an acre of the plaintiff's land, which twenty-two hundredths of an acre included the nine hundredths of an acre embraced in the location adopted by the directors of the Woodbury and Waterbury Street Railway Company in 1905.

In December, 1906, the property and franchises of the Woodbury and Waterbury Street Railway became vested in the Woodbury and Seymour Railway Company, afterward named the Waterbury and Pomperaug Valley Railway Company, the property and franchises of which were in April, 1907, acquired by the Consolidated Railway Company, which in May, 1907, was merged in the defendant company.

One of the rights granted to the Consolidated Railway Company by its charter, was that of taking, "with the approval of the railroad commissioners, in the manner provided in § 3687 of the General Statutes, real estate, . . . for the purpose of constructing or improving any railroad or railway which it shall have the authority or right to construct or operate." 14 Special Laws, p. 714, § 6.

On October 30th, 1907, the directors of the defendant voted to take, subject to the approval of the railroad commissioners, for the purpose of constructing its street railway through the town of Middlebury, a described parcel of land, containing about twenty-two hundredths of an acre, belonging to the plaintiff, and shown upon the route delineated on the map, Exhibit 2, made a part of the finding. Said twenty-two hundredths of an acre included the nine hundredths of an acre described in the location adopted in 1905 and shown on Exhibit F, but the north line of the twenty-two hundredths tract was further north than upon the nine hundredths tract.

On November 12th, 1907, the defendant made an application to the railroad commissioners for their approval of the layout of its railway, which it alleged in its said application it had made, in part, on private land.

On the 28th of December, 1907, by an amended application, it asked the approval of the railroad commissioners of the taking of private land, in which the only person alleged to be interested was the plaintiff, for the construction of its said street railway.

Both of said applications to the railroad commissioners were accompanied by the map and plan of which Exhibit 2 is a part, and both the layout of the railway, the approval of which was asked for by said application of November 12th, and the land of the plaintiff, the approval of the taking of which was asked for by the amended application, were those delineated on Exhibit 2, and were upon and consisted of the said twenty-two hundredths of an acre of the plaintiff's land.

The approval of the railroad commissioners was given upon both of these applications; upon the first on December 27th, 1907, and upon the second on January 8th, 1908.

The defendant's reasons of appeal to this court are, in substance, that the trial court erred in overruling these claims of law of the defendant: (1) that said orders of approval of the railroad commissioners were legal and valid as approvals of the location and taking of the nine hundredths of an acre of the plaintiff's land shown upon Exhibit F, and that the trial court should therefore remand the applications to the railroad commissioners with instructions to limit their approvals to the layout and taking of the nine hundredths of an acre of the plaintiff's land; and (2) that the route across private property, adopted and built upon over the private property acquired by the defendant from Kelly, was one authorized by the charter of the Woodbury and Waterbury Street Railway Company, and authorized by law.

The defendant does not claim to be entitled to the approval of the railroad commissioners of a layout and taking of twenty-two hundredths of an acre of the plaintiff's land, but only to a judgment which will enable it to continue its proceedings to condemn the nine hundredths of an acre.

The trial court properly held that the approval by the railroad commissioners of the layout and taking of the twenty-two hundredths of an acre was not an approval of a layout and taking of nine hundredths of an acre. Neither the defendant nor any of its predecessors have ever asked the railroad commissioners to approve of the *layout* and location of 1905 upon the nine hundredths of an acre of the plaintiff's land, nor to approve of the *taking* of only nine hundredths of an acre. In fact, neither the directors of the defendant nor those of any of its predecessors have ever voted to condemn but nine hundredths of an acre of the plaintiff's land. The defendant's predecessors attempted to purchase the nine hundredths of an acre which was embraced in the

layout of 1905, but they never voted, nor have the defendant's directors ever voted, to take it by condemnation proceedings. In constructing the railway it was found that nine hundredths of an acre of the plaintiff's land was insufficient to construct the railway, and that more than twice that quantity was required in order to properly construct the road. Hence, the defendant's directors on October 30th, 1907, voted to take twenty-two hundredths of an acre. They have never voted to condemn a less quantity, and neither said vote of October 30th, 1907, nor the application of 1907 for the approval of the railroad commissioners of the taking of twenty-two hundredths of an acre, indicate that the defendant had decided to condemn nine hundredths of an acre, any more than they indicate that it had decided to condemn any other less quantity which it deemed insufficient for its purposes.

Again, the approval of the railroad commissioners of the taking of twenty-two hundredths of an acre was not an approval of the taking of only nine hundredths of an acre. The decision of the railroad commissioners that it was proper for the defendant to take a certain quantity of the plaintiff's land, in order to rightly construct its railway, is not a decision that a smaller quantity would be sufficient for that purpose. From the approval of the railroad commissioners of the taking of the larger quantity, we cannot say as a matter of law' that they would have approved of the taking of a lesser quantity, even had their approval of the lesser quantity been expressly asked for. They might have deemed the smaller quantity insufficient, as apparently the defendant did, and might therefore have refused to approve of the taking of but nine hundredths of an acre.

The trial court erred in holding that the route over private property, adopted and built upon at the place

in question, was not one authorized by the charter of the Woodbury and Waterbury Street Railway, and authorized by law. The route over the property acquired from Kelly is about two hundred and thirty feet long, and about three hundred feet less in length than it would have been had it followed the highway on the east, north and west sides of the plaintiff's land, as described in the charter, and is at its furthest point two hundred and fifty feet from the highway. It is found that the adopted route in question over private property, though not upon the highway, as described in the charter, is near to it. We discover no reason for questioning the finding that it is near the highway. As we have shown, the charter, after describing the route in the highway, expressly states that the street-railway company is "further authorized and empowered" to construct a railway "upon any private property which it has or may acquire near to the route mentioned herein." The word "acquire" is broad enough to include property taken by condemnation proceedings as well as that obtained by purchase. The charter further empowers the company to take by condemnation proceedings any land which it may require to construct its railway upon; and the charter of the Consolidated Railway Company empowers it to take land, with the approval of the railroad commissioners, for the purpose of constructing or improving any railway which it may have the authority to construct. The defendant has already acquired the Kelly land upon which the railway has been built. The quoted charter provisions empowered it to acquire the required portion of the plaintiff's land. The route adopted was therefore one authorized by charter.

The trial court erred in holding that the adopted route over private land, at the place in question, was not authorized by charter. It committed no error in annulling and disaffirming the orders of the railroad commis-

sioners appealed from, and in refusing to remand the applications to the railroad commissioners.

In this opinion the other judges concurred.