EDWARD E. STEVENS *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, New Haven, June Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK AND WHEELER, JS.

By an appeal, taken under § 3834 of the General Statutes, from the action of the railroad commissioners upon a petition to them by a street-railway company, the Superior Court is not empowered to try *de novo* the question properly submitted to said commissioners as an administrative tribunal.

In such an appeal the so-called appellant assumes a position similar to that of a plaintiff in an action in equity, with the burden of showing that the railroad commissioners acted without authority, or irregularly.

Where such a railway company has petitioned to the railroad commissioners under chapter 101 of the Public Acts of 1909, for their approval of a proposed alteration of its layout and location and of the taking of land therefor, the vote of the company's directors to make the alterations in question and take the land needed therefor, is a fact without proof of which the action of the commissioners would be unauthorized by law, and as such commissioners are a special statutory tribunal, it is necessary that this jurisdictional fact should appear in their proceedings.

A petition to the commissioners in such a case is to be heard before an administrative tribunal, and is a proceeding in which issues of law and fact are not intended to be framed by pleadings with the same formality as in ordinary actions at law or in equity.

Although the petition to the commissioners in such a case failed to allege the passage of such a vote by the directors of the railway

company, yet, since it appeared from the decision and order of the commissioners that such vote was passed, and no objection appeared to have been made before them to the proof of that fact, the failure to allege the passage of said vote did not render the action of the commissioners beyond their jurisdiction, or unlawful, or irregular.

Furthermore, the commissioners having found the passage of such a vote, it could properly be proved in the Superior Court to meet any evidence of the plaintiff that no such vote had been passed, and that therefore the commissioners had no jurisdiction.

Under chapter 101 of the Public Acts of 1909, it is unnecessary for a street-railway company to first attempt to obtain the land in its proposed layout, by agreement with the owners thereof or by condemnation proceedings, before asking the railroad commissioners for an approval of its layout.

The fact that such a railway company, without authority, has entered upon certain land of another, and made excavations thereon, and that suits for damages for such acts are pending against it, does not prevent the company from proceeding to condemn the land in question, under chapter 101 of the Public Acts of 1909 and § 3687 of the General Statutes.

The case of Norton v. Shore Line Electric Ry. Co., 84 Conn. 40, distinguished.

Argued June 5th—decided July 26th, 1912.

APPEAL from an order of the railroad commissioners approving the alteration and widening of the location and layout of the defendant's right of way for its street railway over private property, taken to and tried by the Superior Court in New Haven County, *Case, J.;* facts found and judgment rendered dismissing the appeal and affirming the order of said commissioners, and appeal by the plaintiff. *No error.*

*Verrenice Munger,* for the appellant. (plaintiff).

*Benjamin I. Spock,* for the appellee (defendant).

HALL, C. J. Many of the facts which make up the history of the defendant's attempts for several years to procure the condemnation, for the purposes of its

street railway, of certain land belonging to the plaintiff, appear in the cases of *New York, N. H. & H. R. Co.* v. *Stevens*, 81 Conn. 16, 69 Atl. 1052, and *Stevens* v. *New York, N. H. & H. R. Co.*, 83 Conn. 603, 78 Atl. 440. Some of those facts are relevant to the questions raised in the present proceeding, by which the defendant is seeking, under chapter 101 of the Public Acts of 1909, to condemn, for its railroad purposes, a described strip of the plaintiff's land, containing about twenty-two hundredths of an acre, adjoining the northerly side of the land upon which the defendant's railway is now operated.

It appears from the record before us, that in 1907 the defendant commenced the construction of its street railway, a portion of which crosses private property acquired by the defendant of one Kelly, and completed and opened it for travel about September 1st, 1908.

During the early construction of the railway, the contractors acting for the defendant entered upon the easterly end of the twenty-two hundredths of an acre now sought to be condemned, believing that it had been purchased by the defendant from the plaintiff, and, until stopped by the plaintiff, excavated to some extent upon the plaintiff's land, for the purpose of sloping back the cut through which the railway was to pass. Thereafter the excavation for the cut, varying from two to twenty feet, was completed wholly upon the defendant's land, but close to the plaintiff's southerly line, and the railway and its fixtures and appurtenances have been constructed and maintained wholly upon the defendant's land; and such material as has fallen from the embankment into the cut has been removed by the defendant.

After said entry of the defendant upon the easterly end of said strip, the plaintiff brought an action, returnable to the Court of Common Pleas, against the defend-

ant for alleged damages caused by such entry, and for alleged deprivation of lateral support, and for an injunction restraining the operation of said railway; and later, in September, 1910, brought another action, returnable to the Superior Court, asking for such an injunction, and for similar damages, and for loss of the soil and other materials which had fallen from his land into the cut and had been removed by the defendant. Both of these actions are still pending.

On April 8th, 1910, the directors of the defendant voted to alter its said location so as to change the width of its layout and its slopes and embankments, and to take for that purpose said twenty-two hundredths of an acre belonging to the plaintiff, describing in its said vote the strip of land in question in this case.

On December 20th, 1910, the defendant brought its petition to the railroad commissioners, for their approval of said alteration of its location and change in the width of its layout, and of the taking of said land therefor; and on January 4th, 1911, the railroad commissioners, after due hearing, approved of the same, and prescribed the taking of said land.

Said petition was brought by the defendant, and action taken by the railroad commissioners, under chapter 101 of the Public Acts of 1909, which reads as follows: "Whenever any street railway is located and constructed in part on private way, upon the written petition of the selectmen of any town, the mayor and common council of any city, or the warden and burgesses of any borough in which such private way is situated, or of the company owning or operating such railway, the railroad commissioners, after reasonable notice of the time and place of hearing thereon shall have been given to the petitioners, the company, and the persons interested in the land adjoining such private way, shall find that public safety and convenience require an

alteration in such location, the company owning such railway may so far alter such location as to change the radius of its curves, the width of its layout, its slopes and embankments, may straighten and improve its lines and extend its lines of sight, and, with the written approval of said commissioners prescribing the extent, may take land for such purposes in the manner provided in section 3687 of the general statutes."

Said petition contained no allegation of said vote of the defendant's directors, on April 8th, 1910, nor of any vote of defendant's directors, to adopt said proposed layout and alteration. The railroad commissioners, in their decision and order, found as a fact that the directors of the railroad company had voted to adopt said alteration, and to take said described land for that purpose; and that public convenience and necessity required that the petitioners should take said land for the purpose of making said proposed alterations.

From said decision and order of the railroad commissioners the plaintiff appealed to the Superior Court under § 3834 of the General Statutes, and attached thereto, as a part of said appeal, a copy of the defendant's said application to the railroad commissioners, and of the commissioners' said decision and order thereon; and filed in the Superior Court fifteen reasons of appeal, which need not be recited here. The Superior Court made a finding of facts and dismissed the appeal.

Upon the trial in the Superior Court the plaintiff objected to proof by the defendant of said vote of its directors, of April 8th, 1910, to change the width of its embankments, etc., and to take said twenty-two hundredths of an acre of the plaintiff's land therefor, upon the ground that it was irrelevant and immaterial, and was not alleged in the petition to the railroad commissioners. The court overruled said objection, and found that said vote was passed, and made a

copy of said resolution of said directors a part of its finding.

By the appeal, taken under § 3834, the Superior Court is not empowered to try *de novo* the questions properly submitted to the railroad commissioners as an administrative tribunal. One may properly be said to be "aggrieved," within the meaning of that word in § 3834, when his property rights are injuriously affected by the unauthorized or irregular acts of the commissioners. *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 24, 34, 78 Atl. 587.

In taking and prosecuting an appeal under this section, the so-called appellant assumes a position similar to that of a plaintiff in an action in equity, with the burden of showing that the railroad commissioners acted without authority, or irregularly. Section 3834 provides that the appeal shall be taken in the same manner as appeals taken under § 3747, and with like effect; and § 3747 provides that the appeal shall be by a petition in writing, etc., and that the court "shall proceed thereon in the same manner as upon complaints for equitable relief." *United States Envelope Co.* v. *Vernon*, 72 Conn. 329, 334, 44 Atl. 478.

While the plaintiff claimed in the Superior Court that it did not appear that the defendant's directors had ever voted to take the land in question, it does not appear that he attempted to prove that the vote of the directors of April 8th, 1910, and which is described in the appeal to the Superior Court as having been found by the railroad commissioners to have been passed, was not in fact passed. In the absence of such proof by the plaintiff, the defendant was not required to offer evidence of such vote.

But if the vote, although not alleged in the application to the commissioners, was properly proved before them to show their jurisdiction, it was properly proved in

the Superior Court to meet any evidence of the plaintiff that no such vote was passed, and that, therefore, the commissioners had no jurisdiction. The real question, then, regarding this vote, is whether the commissioners had jurisdiction to make their order, in the absence of any allegation of such vote in the application to them, but upon proof before them that the vote of April 8th, 1910, was in fact passed.

The vote of the defendant's directors to make the alterations in question and take the plaintiff's land therefor, was a fact without proof of which the action of the railroad commissioners was unauthorized by law; and as the commissioners were a special statutory tribunal, it was necessary that such jurisdictional fact should appear in their proceedings. *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 24, 36, 78 Atl. 587.

The averment, in the application, of such a vote would not have authorized the action of the commissioners, unless the proceedings also showed that the defendant's directors had in fact voted to make the alterations in question. It does appear in the proceedings before the commissioners, namely, in their order, that such vote was passed; and no objection appears to have been made before them to the proof of that fact.

The application to the railroad commissioners followed the language of chapter 101 of the Public Acts of 1909, which makes no provision that the vote of the street-railway company's directors, to make the alterations asked to be approved, shall be alleged in the petition. While the rules of good pleading may require that such facts should be alleged in complaints in ordinary actions, it is to be remembered that this petition to the railroad commissioners was to be heard before an administrative tribunal, and was a proceeding in which issues of law and fact were not intended to be framed, as in ordinary actions at law or in equity.

The syllabus in *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 40, 78 Atl. 593, states that "an application to the railroad commissioners for their approval of the *layout* of a railway on private land, and of the method of its construction therein described, should allege that the directors of the railway company have adopted the proposed plan of location." The application in that case was for the approval of an original layout and of methods of construction, and the statement in the opinion (p. 44) is that the "*proceedings* disclose no action of the directors of the railway company approving a plan of location," and that "*until such action,* any approval by the railroad commissioners of the plan and method of construction was unauthorized in law."

Since it appears from the decision and order of the railroad commissioners, that the defendant had voted to make the alterations, changing the width of its layout, etc., the approval of which alterations and of the taking of said land therefor, is asked in the petition brought under chapter 101 of the Public Acts of 1909, the failure to allege in the petition said vote of the defendant's directors of April 8th, 1910, did not render the action of the railroad commissioners beyond their jurisdiction, or unlawful, or irregular, and the plaintiff has no cause to complain of the ruling of the Superior Court permitting said vote to be proved.

There is no merit in the plaintiff's claim that the defendant could not, under chapter 101 of the Public Acts of 1909, properly ask for the approval of the railroad commissioners of the proposed widening of the layout, until it had first attempted to obtain the land by agreement with the plaintiff, or by condemnation proceedings. Section 3687 of the General Statutes provides for such an attempted agreement before making an application for the appointment of appraisers, but no such precedent attempt is required by said

chapter 101 before asking for the approval of a proposed widening of a layout of a completed railroad, and said chapter 101 of the Public Acts of 1909 clearly contemplates proceedings for condemnation under the provisions of § 3687, after the approval of the railroad commissioners has been obtained under said chapter 101.

The fact that the defendant, without authority, entered upon the plaintiff's land in question, and made excavations as above stated, and that suits for damages for said acts are still pending, does not prevent the defendant from proceeding to condemn the land under the provisions of chapter 101 and § 3687. We have no occasion to decide what damages the plaintiff may recover in said pending actions, either before or after a condemnation of the land. The question before us is whether these facts constitute a bar to condemnation proceedings. The authorities are that they do not. 2 Lewis on Eminent Domain (3d Ed.) § 759; *Coster* v. *New Jersey R. & T. Co.*, 24 N. J. L. 730, 732; *Justice* v. *Nesquehoning Valley R. Co.*, 87 Pa. St. 28, 32; *St. Johnsbury & L. C. R. Co.* v. *Willard*, 61 Vt. 134, 17 Atl. 38; *Jones* v. *New Orleans & Selma R. Co.*, 70 Ala. 227; *Vincent* v. *New York, N. H. & H. R. Co.*, 77 Conn. 431, 436, 59 Atl. 491. Section 3688 of our General Statutes provides that "any company, owning a railroad which has been constructed and is being operated over land to which it has not acquired title, may take such land within the limits of its location, at any time within two years after the approval of such location by the commissioners, by proceedings under § 3687."

Other claims of the plaintiff call for no special discussion.

There is no error.

In this opinion the other judges concurred.