[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiff, Thomas Sirowich, Jr., appeals from a decision of the defendant, the Plan Zoning Commission of the Town of Woodbridge ("the Commission"), denying his application for a Special Permit. The plaintiff filed his application and site plan on or about November 24, 1998. The defendant Commission held a public hearing on the application on January 4, 1999 and following said hearing, on the same date, voted to deny the application. Notice of the Commission's decision was duly published on January 14, 1999. This appeal followed. A hearing on the appeal was held on April 18, 2000, at which the plaintiff was found aggrieved for the CT Page 9393 purpose of standing to pursue this appeal.
 II
Mr. Sirowich is the owner of the subject property, a 6.128 acre lot designated as 1172 Old Racebrook Road in the Town of Woodbridge. The property at issue is in a Residence A District. A Residence A District requires a minimum lot size of 1 1/2 acres. The property has 333 feet of frontage on Old Racebrook Road, and an existing dwelling located on the rear portion of the lot. By his application for special permit, Sirowich sought to divide the lot into two lots, a front and rear lot, with the existing house situated on the rear lot. Under the Zoning Regulations of the Town of Woodbridge, ("Regulations"), S. 3.13, a front lot requires a minimum lot size of 65,000 square feet and a rear lot 97,500 square feet. As proposed, the lots at issue fit comfortably within this density restriction, the front lot comprising 112,714 square feet and the rear lot, 146,614 square feet. All other bulk requirements are met.
Section 3.43 of the Town's Zoning Regulations ("Regulations") governs the creation of rear lots. Section 3.43 allows the Commission to "issue a special permit, with or without conditions, to allow on a rear lot any use otherwise permitted in the Zone if it finds that such lot provides for the best development of the land and that the public health and welfare are not adversely affected." S. 3.43 goes on to state, in pertinent part: "The approval of a rear lot shall be considered only in the following instances:
. . . . (b) In the case of a parcel to be divided into two or more lots: if the Commission determines that the use of a rear lot is made necessary by unusual features peculiar to the land in question, such as difficult drainage, difficult configuration, temporary flooding, steep topography, public utility lines or easements."
Finally, S. 3.43 states: "It is not the intent of these regulations to increase the density of land development by further division of existing house lots nor, in the case of a new subdivision, to encourage the creation of rear lots."
 IV
Judicial review of the Commission's decision is limited to a determination of whether the decision was arbitrary, illegal or in abuse of discretion, Whitaker v. Zoning Board of Appeals, 179 Conn. 650, 654. The Commission is vested with a large measure of discretion, and the burden of showing the agency has acted improperly rests upon the one who asserts it, Mario v. Fairfield, 217 Conn. 164, 169. Courts allow zoning CT Page 9394 authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution, Burnham v. Planning Zoning Commission, 189 Conn. 261, 266
(citation omitted.) However, a court cannot take the view in every case that the discretion exercised by the local zoning authority cannot be disturbed, for if it did the right of appeal would be empty, Daughters ofSt. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 57
(citation, quotation marks omitted).
A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations, HousatonicTerminal Corporation v. Planning Zoning Board, 168 Conn. 304, 307
(citation omitted). When considering an application for a special permit, a zoning authority acts in an administrative capacity and its function is to determine whether the proposed use is permitted under the regulations and whether the standards set forth in the regulations and statutes are satisfied. It has no discretion to deny a special permit if the regulations and statutes are satisfied, Daughters of St. Paul, Inc.v. Zoning Board of Appeals, supra, at 56 (citations omitted). However, "Although it is true that the zoning commission does not have discretion to deny a special permit when the proposed use meets the standards, it does have the discretion to determine whether the proposal meets the standards set forth in the regulations", Irwin v. Planning ZoningCommission, 244 Conn. 619, 628.
An administrative agency such as the [Commission] is called on to determine the applicability of the [zoning regulations] to a given set of facts presented to it, Pascale v. Zoning Board of Appeals, 150 Conn. 113,116-17. Although the position of the municipal land use agency is entitled to some deference, the interpretation of a municipal ordinance is nevertheless a question of law for the court, Northeast Parking, Inc.v. Planning Zoning Commission, 47 Conn. App. 284, 291. The court is not bound by the legal interpretation of an ordinance by a zoning commission, Id.
Where the Commission states its reasons for a decision the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the Commission is required to apply under the zoning regulations, Irwin v. Planning Zoning Commission, supra, at 629 (citation, quotation marks omitted). Failure of an agency to make findings, even those required by statute or regulation, does not render its decision null and void: rather, the reviewing court must search the record of the hearing before that commission to determine if there is an adequate basis for its decision, Samperi v. Inland Wetlands Agency, CT Page 9395226 Conn. 579, 588-89, quoting from Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604, 611. When, as here, the Commission acts in an administrative capacity, the evidence to support any such reason must be substantial, Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540. The "substantial evidence" standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, Kaufman v. Zoning Commission,232 Conn. 122, 151. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence, Samperi v. InlandWetlands Agency, supra, at 588 (citations, internal quotation marks omitted).
 V
The Commission gave as its reason for denial ". . . the application did not meet the requirements of Section 3.43 . . ." (Return of Record, Minutes of January 4, 1999; Letter, January 14, 1999, Swanson to Couch). The Court is thus left to determine if substantial evidence exists in the record to support the Commission's conclusion.
As indicated, the Commission may authorize a special permit "to allow on a rear lot any use permitted in the Zone" providing that the Commission find (1) that such lot provides for the best development of the land and (2) that the public health and welfare are not adversely affected. The Commission made no such findings, nor was it required to do so unless it sought to authorize the issuance of the special permit applied for. Moreover, the application at issue sought, not permission for a use on an existing rear lot, but creation of a rear (and a front) lot from an existing lot.
In arguing their positions, both parties rightly focus on the application of Section 3.43(b), as well as the intent of the regulation with regard to density of land development, as expressed in said regulation. Pursuant to S. 3.43, the approval of a rear lot, in this instance, can be considered only "if the Commission determines that the use of a rear lot is made necessary by unusual features peculiar to the land in question, such as difficult drainage, difficult configuration, temporary flooding, steep topography, public utility lines or easements.
The plaintiff asserts that steep topography, difficult drainage and temporary flooding of the subject property make necessary the creation of a rear lot. It should be noted that two patches of wetlands, totaling some 12,000 square feet, are located in the front part of the existing lot, adjacent to Old Racebrook Road. Absent the wetlands, the plaintiff CT Page 9396 asserts, he could divide the lot at issue without the need for the special permit sought. There is ample evidence in the record that for the plaintiff to divide his property into two buildable lots creation of a rear lot is made necessary by unusual features peculiar to the land in question, the unusual features being the existence and location of the wetlands. The question arises: necessary for what? The Court answers: necessary to allow the plaintiff to divide his property into two building lots, conforming in size and all bulk requirements. The Court finds that the plaintiff established that approval of a rear lot was made necessary by unusual features peculiar to the land in question. The Court finds no evidence in the record to allow the defendant Commission to conclude that approval of a rear lot was not made necessary by unusual features peculiar to the land in question.
The remaining issue has to with the intent of the regulation. Section 3.43 states, in pertinent part: "It is not the intent of these Regulations to increase the density of land development by further division of existing house lots . . ." The defendant asserts that "[i]t is clear from the text of the regulation that the intent of the regulation is not to "encourage the creation of rear lots'." Equally clear, the intent of said regulation is not to bar the creation of rear lots. The defendant urges on the Court a reading of S. 3.43(b) that would apply its provisions to a situation where undeveloped land is being considered for division into two or more lots, but would leave the Commission free to reject an application such as that before the Court, where a lot is already developed, with the existing house located at the rear of the property, on what would become the rear lot, even when the standards of § 3.43(b) are met.
Thus, under this interpretation, absent the presence of the dwelling, the plaintiff would have been allowed to divide his land as proposed, creating two buildable lots. However, because of the existing dwelling, he will not be allowed to do so, because this would impermissibly "increase the density of land development by further division of existing house lots". Under this interpretation, creation of rear lots only on an undeveloped tract of land would be permitted. Left unexplained is how the approval of division of an undeveloped parcel would not lead to increase of the density of land development, while approval of the proposal at issue would increase said density of land development.
By clear implication, the defendant Commission asks the Court to find that S. 3.43 treats "house lots" differently from other, "undeveloped", lots, and bars "further division of existing house lots". The plaintiff suggests that the concluding sentence of S. 3.43 is no more than a general statement of intent, and neither an independent standard nor a prohibition against an appropriate division of house lots. "When two CT Page 9397 constructions are possible, courts will adopt the one which makes the [regulation] effective and workable, and not one which leads to difficult and bizarre results, Muller v. Town Plan Zoning Commission,145 Conn. 325, 331. The Court finds that the interpretation urged on it by the defendant would lead to difficult and bizarre results, converting a regulation regulating the use of rear lots into a prohibition of dividing an existing house lot by creating a rear lot. The division of a 6.128 acre lot into two lots, each well in excess of the minimum square footage of a Residence A District, cannot be said to increase the density of land development in said District, unless one claims that any division of an existing house lot increases the density of land development, by virtue of permitting two dwellings to be placed where previously only one was allowed. Again, this converts the regulation into a ban on issuance of a special permit to allow division of existing house lots. Were that the intent of the drafters of the regulation, they could have stated so. The court will not impute a ban where none is stated.
The defendant claims that the court's interpretation strips the Commission of discretion. Not so. First the Commission has the discretion to determine whether the applicant meets the standards of Regulations, § 3.43(b). The Commission could also conclude that the applicant's proposal does not provide for the best development of the land or that the public health and welfare are adversely affected. But either conclusion must be supported by substantial evidence in the records.
 V
The Court has found that the plaintiff met the standard of S. 3.43 (b), in that the use of a rear lot is made necessary by unusual features peculiar to the land in question.
S. 3.43 requires that, in authorizing "issuance of a special permit to allow any use otherwise permitted in the Zone" the Commission must find that "such lot provides for the best development of the land" and that "the public health and welfare are not adversely affected". Because the Commission did not address these issues, the Court must review the record to determine if there is substantial evidence in the record to support refusal to make such findings, or either of them. The Court finds no substantial evidence in the record to support a refusal to make such findings, or either of them.
The court finds, however, that there is substantial evidence in the record to support both required findings, that "such lot provides for the best development of the land" and that "the public health and welfare are not adversely affected." CT Page 9398
The plaintiff, Thomas Sirowich, has established, by a fair preponderance of the evidence, that the defendant Town Plan Zoning Commission, in denying the plaintiffs application for special permit, acted illegally, arbitrarily and in abuse of the discretion vested in it. Accordingly, the plaintiffs appeal is sustained.
By the Court,
Downey, J.