LOUISE S. PARSONS ET AL. *v.* THE TOWN OF WETHERSFIELD ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 8—decided July 14, 1948

*Wallace R. Burke,* with whom, on the brief, was *Frank R. Odlum,* for the appellants (plaintiffs).

*Joseph V. Fay, Jr.,* with whom, on the brief, was *David R. Woodhouse,* for the appellees (defendants).

JENNINGS, J.   The zoning commission of Wethersfield, four of the five commissioners present and voting, changed the Griswold property, hereinafter described, from a residence zone to a light industrial zone on August 6, 1946.   The plaintiffs appealed on the ground that the action of the commission was not unanimous and that there had been no substantial change in the neighborhood since the adoption of the zoning regula-

tions. The trial court rendered judgment for the defendants.

With such changes in the finding as the plaintiffs are entitled to, the controlling facts may be summarized as follows: Zoning was adopted in Wethersfield in 1926. The property of William G. Griswold, Jr., and Frederick A. Griswold, II, hereinafter called the defendants, was placed in a residence district. They petitioned twice for a change of zone, but both of these petitions were "discouraged" by the commission. Their present petition was for a change from residence to industrial zone 1. Industrial 2 is for heavy industry and industrial 1 for light industry. The uses permitted in the latter are those allowed in a business zone plus the operation of such light industries as distributing and bottling plants and the assembly and sale of small tools and appliances.

The defendants' land bounds west on the Silas Deane Highway about 1800 feet, north on land of Ray Stolzenbach about 500 feet, east on land of the New York, New Haven and Hartford Railroad Company about 1900 feet and south on land of Frank Briggaman about 200 feet and on land of Owen W. Sweeney about 500 feet. The Silas Deane Highway is 100 feet wide and carries a heavy volume of traffic between Hartford and Middletown and beyond. It was built subsequent to 1926. Except for the construction of this highway, no physical change which had any practical effect on the plaintiffs' property was made between 1926 and 1946. The Stolzenbach and Sweeney properties were zoned for industrial 1 and that of Briggaman for industrial 2 on August 6, 1946. The latter property had been in an unclassified industrial zone since 1926. There are other properties zoned for industry near this highway, including a strip 300 feet wide along the west side of the railroad from the property in question

south to the town line and a large lot north of the lots of the plaintiffs between Middletown Avenue and the railroad. A pole line runs diagonally through the property in question and another along the eastern boundary. There is a 50-foot right of way along the eastern boundary for the high-tension tower line of the Connecticut Power Company. The railroad property is a strip of land 66 feet wide running along the entire eastern boundary east of the power lines. Middletown Avenue roughly parallels the railroad property and is between 300 and 500 feet to the east. The plaintiffs own houses and lots facing east on Middletown Avenue and in the aggregate own more than 20 per cent of the land east of and opposite the Griswold property. They opposed the defendants' petition at a hearing before the zoning commission. The railroad lies between the lands of the plaintiffs and defendants. The value of the plaintiffs' lots will not be affected by the change.

In 1945 Wethersfield engaged an expert in city planning to make a survey of the town. He submitted a master plan for town development and recommended that the land in question be zoned for industrial number 1 use.

The trial court concluded that a unanimous vote of the commission was not required, that the classification of the land in question as industrial 1 was in accord with a comprehensive plan for zoning in the town of Wethersfield and that the commission acted with fair and proper motives, skill and sound judgment.

At the threshold of this inquiry lies the question whether a unanimous vote of the commission was required to accomplish a change in zone. This depends upon the construction of General Statutes, Cum. Sup. 1939, § 132e. It reads in part: "If a protest shall be filed with the zoning authority against such change, signed by the owners of twenty per cent

or more of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending one hundred feet therefrom, . . . such change shall not become effective except by unanimous vote of the zoning authority if such zoning authority is a zoning commission. . . ." The decision on this point depends on the meaning to be accorded the words "immediately adjacent." If the railroad owned only a right of way, the property owners on either side owned to its center and their lands might be said to be immediately adjacent. *Center Bridge Co.* v. *Wheeler & Howes Co.,* 86 Conn. 585, 589, 86 A. 11. The railroad can, however, own land for its tracks in fee. *New York, B. & E. Ry. Co.* v. *Motil,* 81 Conn. 466, 471, 71 A. 563; General Statutes § 5008. If it owned this 66-foot strip in fee, the land of the plaintiffs did not adjoin or abut the land in question, but it still must be determined whether it was immediately adjacent.

The plaintiffs relied in argument both in the trial court and in this court on their claim that the railroad owned only a right of way. They did not plead it. On the contrary, their complaint reads "The defendants . . . are the owners . . . of land . . . between the East Line of the Silas Deane Highway and the West property line of the . . . Railroad. . . ." They did not claim it during the trial, as is expressly found. In their draft finding they stated: "There is a strip of land owned by the . . . Railroad. . . ." The court referred to the land as owned by the railroad in many paragraphs and those findings are not attacked. The plaintiffs cannot now claim that the railroad owned only a right of way.

It is unnecessary to determine whether the term "immediately adjacent," standing alone, is the equivalent of abutting or adjoining, a question argued at length in the briefs. The intent of the General Assembly in passing an act is to be determined in the first

instance by the words it has used. *State* v. *Bello*, 133 Conn. 600, 604, 53 A. 2d 381. Its general purpose must also be considered. *Biz* v. *Liquor Control Commission*, 133 Conn. 556, 559, 53 A. 2d 655. The purpose of § 132e as far as the case at bar is concerned is to define the protesting interest deemed sufficient to require unanimous action by the commission. The pertinent words are "twenty per cent or more of the lots . . . immediately adjacent." To say that the term "lots . . . immediately adjacent" is to be defined as lots in the immediate vicinity or neighborhood, as claimed by the plaintiffs, would furnish no definite standard on which to figure the percentage. If, on the other hand, it is construed as meaning "adjoining or abutting," the test can be easily applied. The latter is a common definition. *Tudor* v. *Chicago & S. S. R. T. R. Co.*, (Ill.) 27 N. E. 915, 917; *Lawrenceburg* v. *Maryland Casualty Co.*, 16 Tenn. App. 238, 242, 64 S. W. 2d 69; *Long* v. *London & Lancashire Indemnity Co.*, 119 F. 2d 628, 630; *Pickens* v. *Maryland Casualty Co.*, 141 Neb. 105, 108, 2 N. W. 2d 593. The property of the plaintiffs was not immediately adjacent to the land in question and a unanimous vote of the commission was not required.

The finding supports the conclusion that the change in zone was in accordance with a comprehensive plan for zoning the town. A map in evidence, read in connection with the finding, does not present a picture of an exclusive residential district. The land along Middletown Avenue is zoned as residence C, which is the least restrictive of residence classifications. The railroad and power lines and the heavy industry centers north and southwest of the defendants' block of lots, all of which apparently existed prior to the adoption of zoning in 1926, detract from its desirability for homes. The zone change was not unreasonable, arbitrary or illegal unless it was precluded because of the principle

invoked by the plaintiffs that ordinarily changes in zone should not be made unless new conditions have arisen or there have been substantial changes in the area, especially where a previous application for the change has been denied. *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 137, 154 A. 343; *Burr* v. *Rago,* 120 Conn. 287, 292, 180 A. 444; *Rommell* v. *Walsh,* 127 Conn. 272, 276, 16 A. 2d 483. It is true that these cases involved variations by zoning boards of appeal rather than changes in zone by the zoning authority, but it is pointed out in *Strain* v. *Mims,* 123 Conn. 275, 287, 193 A. 754, that where a single or a very few properties are affected much the same considerations apply.

The finding is not as complete as it might be and some of the exhibits are missing, but, as nearly as can be ascertained, the situation was as follows: After zoning was put into effect in 1926, the Silas Deane Highway was built. The construction of such an important trunk-line highway was certainly a new factor. In spite of this the defendants made no move to seek a change in zone until recently. They then filed the two successive petitions referred to, which were "discouraged" by the commission. Apparently there was no hearing or decision thereon. The later action of the commission granting the defendants' subsequent application was therefore not a reversal of a stand previously taken. It seems that the commission was unwilling to subject the plaintiffs to the activities of a heavy industrial zone, the only one then existing, and that the matter was continuously under consideration in connection with the work of the expert town planner. He was appointed in the fall of 1945. He submitted a master plan for town development and recommended that a new light industrial zone 1 be created and that the land in question be placed in that

zone. The change recommended was in accordance with the master plan for the development of the town and was based on expert advice. Industrial zone 1 was created July 16, 1946. The recommendation referred to was followed when the defendants again applied for the change and their application was granted on August 6, 1946. Pursuant to § 132e, providing that the reason for the ruling shall be set forth on the records of the commission, it stated: "This change of zone is made to provide for the most appropriate use of this land in view of its location between the Silas Deane Highway and the New Haven Railroad, and to encourage the development of desirable types of light industry within the Town of Wethersfield." The evidence fully justifies the finding that "The land in question, because of its location, physical surroundings and relation to the rest of the town is more suitable for use as an industrial #1 zone than as a residential zone." As a matter of fact, the commission appears to have been unusually solicitous of the interests of all parties concerned, including the public. The finding supports the conclusions stated above.

There is no error.

In this opinion the other judges concurred.