EMIL MULLER ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF HAMDEN ET AL.

JAMES C. GABIANELLI ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF HAMDEN ET AL.

BALDWIN, DALY, KING, MURPHY and MELLITZ, Js.

Argued April 2—decided May 27, 1958

*Dennis N. Garvey,* with whom, on the brief, were *Lewis E. Caplan, Richard A. Dice* and *Robert W. Leavenworth,* for the appellants (defendants Peters) in each case.

*Anthony E. Grillo,* for the appellant (named defendant) in each case.

*James P. Doherty,* with whom, on the brief, was *Joseph R. Greco,* for the appellees (plaintiffs) in the first case.

*Thomas J. O'Sullivan,* for the appellees (plaintiffs) in the second case.

MELLITZ, J.   On June 27, 1956, the defendants
Henry D. Peters, Helen B. Peters and M. Virginia
Peters, hereinafter called Peters, owned an eighty-
three acre tract of land in Hamden.  They petitioned
the zoning commission for a change of classification
of approximately forty-seven acres of it from resi-
dence to business.  A protest against such a change
was filed by the owners, hereinafter called the Ham-
den Plaza interests, of the land lying immediately
to the south.  On this land a large suburban shopping
center known as Hamden Plaza is located.  After
public hearings, which were held upon proper notice,
the commission approved the Peters petition by a
majority vote.  An appeal was taken to the Court of
Common Pleas by the Hamden Plaza interests.  A
separate appeal was taken by James C. Gabianelli
and other residents and owners of property in the
immediate neighborhood who claimed to be ag-
grieved by the action of the commission.  The ap-
peals were combined for trial in the Court of Com-
mon Pleas, where they were sustained.  The defend-
ants, the commission and Peters, have appealed
from the judgments rendered.  During oral argu-
ment the defendants abandoned their claim that the
plaintiffs in the Gabianelli appeal were not ag-
grieved and hence were not entitled to appeal from
the action of the commission.   Cum. Sup. 1955,
§§ 379d, 381d; Nov. 1955 Sup., § N11.

The decision of these cases requires an interpre-
tation of § 375d of the 1955 Cumulative Supplement,
which is stipulated to be applicable.  The statute
(now Public Acts 1957, No. 662) reads as follows:
"If a protest is filed at [the public] hearing with the
zoning commission against [the proposed] change
signed by the owners of twenty per cent or more of
the area of the lots included in such proposed

change, or of the lots within five hundred feet in any direction of the property included in the proposed change, such change shall not be adopted except by a vote of three-fourths of all the members of the zoning commission." The town of Hamden has a commission of five members, so that the affirmative vote of four members would be required for the approval of a change in zone where there was a valid protest. 27 Spec. Laws 571, §§ 4, 5. Here, only three members voted in favor of the Peters petition. The question presented is whether the protesting parties owned sufficient property "within five hundred feet in any direction of the property included in the proposed change" to require an affirmative vote of four members for approval of the petition. The Hamden Plaza interests own all the land within 500 feet to the south of the property sought to be rezoned. This is more than 20 per cent of the area within 500 feet to the south, but it is less than 20 per cent of the area within 500 feet if the perimeter of the property to be rezoned is used as a basis. It is the claim of the defendants that the words "any direction" in the statute mean "all or every direction," while the plaintiffs contend that these words mean "in any one direction," which was the view taken by the court in holding that an affirmative vote of three-fourths, or four members of the commission, was required for approval of the Peters petition.

There is authority for both contentions. The word "any" has a diversity of meanings and may be employed to indicate "all" or "every" as well as "some" or "one." 3A Words & Phrases (Perm. Ed.). Its meaning in a given statute depends upon the context and subject matter of the statute. In *New York, N.H. & H.R. Co.* v. *Stevens,* 81 Conn. 16, 21, 69 A. 1052,

we held it to be too comprehensive a word to receive a narrow construction. To find the sense in which it is employed in § 375d, we must look at the wording of the statute, its legislative history and its basic policy. *Wilson* v. *Miller,* 144 Conn. 212, 214, 128 A.2d 894. The original enactment authorizing zoning generally in this state was chapter 242 of the Public Acts of 1925. Section 5 of that chapter contained a provision, commonly found in zoning acts, that when a protest against a change of zone was filed by the owners of 20 per cent or more of the area of the lots included in the proposed change, or of those immediately adjacent in the rear thereof extending 100 feet therefrom, or of those directly opposite thereto extending 100 feet, a vote by more than a majority of the zoning authority was required for the adoption of the change. We had occasion to interpret this section, as amended (Cum. Sup. 1939, § 132e), in *Parsons* v. *Wethersfield,* 135 Conn. 24, 29, 60 A.2d 771. We held the words "immediately adjacent" to mean "adjoining or abutting." We said that this interpretation was required in order to set a definite standard by which to compute the percentage referred to in the statute and that the statute had for its purpose the precise definition of the protesting interest, deviation from which would be a departure from an exact standard.

In 1947, the legislature changed the method of fixing the qualifications of property owners as protestants. Sup. 1947, § 123i; Rev. 1949, § 838. The "immediately adjacent" and "directly opposite" tests of the original act were abandoned. Instead, a protest by property owners outside of the area to be rezoned, to be effective, had to be made by the owners of 20 per cent of the area "of the lots within two hundred feet in any direction" of the property in-

cluded in the proposed change. In 1951, the distance was extended to 500 feet. Cum. Sup. 1951, § 157b; Cum. Sup. 1955, § 375d. The change made by the legislature in 1947 manifested an intent to extend the area within which property owners might qualify as protestants by eliminating the requirement that they must own abutting or adjoining property and that such property must be either in the rear of or opposite the property proposed to be rezoned. By the amendment, the area within which property owners could qualify as protestants became the area bounded by a line drawn at a distance of 200 feet from every point of the outer boundary of the area affected by the change. The increase from 200 to 500 feet made in 1951 evidenced an intent to enlarge the area further. The obvious purpose of this enlargement was to deal with changes which were becoming increasingly larger in extent and influence and for these reasons affected a greater surrounding area. The shopping center change is typical of such a situation.

If the total area from which the protestants may come was to be enlarged, it is only fair to assume that the percentage of that area required to be owned by the protestants would remain the same. This interpretation makes the statute workable because it can be applied to an area of almost any shape which is subject to a proposed change in zone or regulations. It creates a single, precise standard for the ascertainment of the area from which protestants may come and the computation of the protesting interests. The difficulty of applying the old rule, which required the property of the protestants to be "immediately adjacent," is well illustrated in the case of *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 685, 136 A.2d 785, in which

the provisions of a special act rather than the general statutes governed. If the present statute is to be interpreted to mean "in any [one] direction," the problem of determining what area is to be included becomes exceedingly difficult. On the other hand, if the statute is construed to mean land bounded by a line drawn at a distance of 500 feet from every point of the outer boundary of the property subject to the proposed change, the problem of finding the total area to which the 20 per cent rule is to be applied becomes fairly simple, and, as already noted, the construction furnishes an exact standard for the determination of that area. When two constructions are possible, courts will adopt the one which makes the statute effective and workable, and not one which leads to difficult and possibly bizarre results. *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508. A construction attributing to the legislature an intent to create a single, definite standard applicable to all cases is to be favored. *Parsons* v. *Wethersfield,* supra. The construction we accord the statute achieves that result.

It is claimed that such a construction renders the words "in any direction" superfluous. The word "any" as used in the statute as amended does not, however, refer to "only one" of many but, rather, to "all." The phrase "in any direction" indicates, as the legislature meant it should, a marked departure from the statute which permitted a protest only by those owning areas in the rear of or opposite the property subject to the proposed change, that is, in one of two directions, and an intent to include the owners of areas surrounding that property in every direction. This interpretation gives meaning and purpose to the phrase. It is not for the court to say that some other language or provision would

have expressed the legislative intent better than the language used. *State ex rel. Lewis* v. *Turney,* 97 Conn. 496, 504, 117 A. 499.

Since the protesting interests here admittedly owned less than 20 per cent of the area of the lots within 500 feet in any direction of the property included in the proposed change, as we construe the statute, the affirmative votes of three members of the commission were sufficient for the approval of the Peters petition and the adoption of the change in zone.

In view of this conclusion, it is unnecessary to consider the other assignments of error.

There is error in both cases, the judgments are set aside and the cases are remanded with direction to render judgments dismissing the appeals.

In this opinion the other judges concurred.