W. E. REICHERT et al., Appellants,

v.

CITY OF HUNTER'S CREEK VILLAGE
et al., Appellees.

No. 13508.

Court of Civil Appeals of Texas.

Houston.

April 13, 1961.

Rehearing Denied May 4, 1961.

Byron G. McCollough, Chas. W. Bell, John V. Singleton, Jr., Otto A. Yelton, Jr., Houston, Bell & Singleton, Houston, of counsel, for appellants.

Burke M. Martin, City Atty., Hunter's Creek Village, Carnes & Martin, Fulbright, Crooker, Freeman, Bates & Jaworski, Charles M. Haden, Houston, for appellees.

BELL, Chief Justice.

This is a rezoning case. The appellants are W. E. Reichert and Mrs. Irl F. Kennerly. The appellees are the City of Hunter's Creek Village, herein called City, and the members of its City Council. Appellants own adjoining tracts of land on Voss Road just south of U. S. Highway 90, usually called, and herein referred to, as Katy Highway. Under a comprehensive zoning ordinance designated Ordinance No. 11, passed March 25, 1955, appellants' property, which was vacant acreage, was included in Class B—Business. Under an amendatory ordinance passed December 2, 1957, and referred to as Ordinance No. 66, all of Reichert's and Mrs. Kennerly's property lying south of Briar Branch was zoned Class A—Single Family Dwelling.

Appellants attacked the validity of Ordinance No. 66 as being arbitrary. The basis of the assertion that the action of the City in rezoning was arbitrary was in substance that there has been no substantial change in the character of the City or the area in the vicinity of the property or in the subject property between the enactment of Ordinance No. 11 and Ordinance No. 66; that the rezoning was really made because of political pressure exerted on the City Council by property owners living near appellants' property who desired only to serve their selfish interests; that the appellants' property was not suitable for residential purposes and to so zone it would depreciate Reichert's property $60,000 and Mrs. Kennerly's $170,000.

Without noticing appellees' answer in detail, it is sufficient to note they contended

the original zoning was a mistake; that the subject land is suitable for residential purposes; that the City is almost exclusively one of residences; that it is sufficiently served by neighboring businesses and the welfare of the City is best served by the use of the subject property for residences.

After a lengthy hearing, the Trial Court upheld Ordinance No. 66. No attack was made by anyone on Ordinance No. 11 in the sense that it was contended that Ordinance No. 11 was unreasonable and arbitrary. Appellees merely contended it was a mistake to have originally classified the subject lands as Class B—Business and the welfare of the community would have best been served by classifying it for residential purposes.

The statement of facts is 1,600 pages. While we have read the entire statement, we think a fairly brief summary will suffice for the disposition of this appeal.

The City was incorporated in December, 1954. Shortly after incorporation Ordinance No. 10, a temporary zoning ordinance, was adopted and it zoned the subject property for business. Neither tract had theretofore been restricted in any manner. Thereafter, after extensive study by the Zoning Commission and the City Council, the Council on March 25, 1955 passed Ordinance No. 11 again zoning the subject property as Class B—Business. Nothing further occurred until in June, 1957, when Mr. Haden, one of appellees' attorneys, moved into residential property in the vicinity of the subject property. He commenced a movement to obtain a rezoning of the subject property to Class A—Single Family Dwellings. When Council was approached the matter was referred to the Zoning Commission. Too, it was suggested that petitions from residents be obtained asking for rezoning. Such petitions with some 500 signatures were obtained. At least two hearings were had. The Zoning Commission recommended against rezoning. The Council, however, on December 2, 1957, passed the ordinance rezoning

the subject property. Appellants filed their opposition to rezoning.

The evidence shows that there is a strip of land on the south side of Katy Highway just north of Briar Branch and of Reichert's property which is about 200 feet in width at Voss Road, which road borders Reichert's property on the east. This strip is outside of the City and runs west along Katy Highway for about two miles. It varies in width from 200 feet at Voss Road to some 1,400 feet at some points. It is devoted to business purposes. It was excluded from the City because people feared the owners of the businesses might be effective, as they had before, in defeating incorporation. At the time of the passage of Ordinance No. 11 this property was unrestricted and was devoted largely to established businesses. Probably about 90% of the businesses were there prior to Ordinance No. 11. Mr. Reichert's property consists of about 12 acres. It is undivided acreage.

East of Voss Road, and bordering on it, is Mrs. Kennerly's property, which is a heavily wooded tract. Before the conveyance of right of way for the realignment of Voss Road it contained about 21 acres. After conveyance of right of way it contains about 16 acres. North of this tract is a strip of about 200 feet which runs easterly within the City limits some distance east. It lies between Briar Branch and Katy Highway. At the corner of Voss Road and Katy Highway on this strip just north of Mrs. Kennerly's property is a tourist court. The strip is zoned as business property though east of Voss Road there has been relatively little development. When Ordinance No. 11 was passed, as shown by the zoning map and by testimony, the proposed realignment of Voss Road was projected through Mrs. Kennerly's tract and it would run diagonally across it in an S curve from the southwest corner to the northeast corner, cutting the tract almost in half. Later Mr. and Mrs. Kennerly conveyed the right of way for this

road. At the time of trial it had not been constructed.

Running along the north line of that part of subject tracts as rezoned for residential purposes is Briar Branch. It varies in width and depth and serves as a drainage facility. Oral testimony and pictures show it to be heavily lined with trees and underbrush. While the depth and width vary, in the vicinity of its crossing at Voss Road it is about 10 feet deep. The main bed of the stream is 3 or 4 feet deep. For some distance on either side of Voss Road the width from cut bank to cut bank is about 50 feet. The slope of the banks is gradual. We think there can be little question that it serves as a natural barrier desirable in the separation of business from residential property.

Voss Road is a heavily traveled thoroughfare running from the Southwest area of Houston to Katy Highway. Along Voss Road to the south of the subject property within the City are numerous homes. When realigned, Voss Road will tie in with Bingle Road lying to the north of Katy Highway. There will be an overpass on Katy Highway and Voss Road will pass under it. Katy Highway is designed to carry about 80,000 cars daily. It is the main highway between Houston and San Antonio.

To the south, east and west of the subject property is all property zoned for residences. About 400 feet from the east edge of Mrs. Kennerly's property is an elementary school. However, there is presently no connecting street or road between the two and the distance from the school is much greater if you go by street. As a matter of fact, the evidence shows there is relatively little business area in the City. The City is primarily one of homes. Actually, within the limits of the City there is an insignificant amount of land available for business.

However, the area on the south of Katy Highway adjoining the City and to the west of the west line of the City is the business district which extends from Voss Road west

for about 2 miles. While witnesses vary in their characterization of the businesses, it appears there are filling stations, grocery stores, wearing apparel stores, restaurants, and hardware stores. These are strung out over the 2-mile area and this does not make shopping a real convenience. There are no large supermarkets or large department stores. This area can be reached rather conveniently without traveling Katy Highway by going west on streets within the City and thence north to the service road along the south of Katy Highway. There are shopping areas north of Katy Highway on Long Point Road, at Post Oak and Memorial and in Tanglewood that are from 2 miles to 4½ miles from Voss Road and Katy Highway. They would serve some of the needs of some few of the residents of the City, but their location and character are such as to have little bearing on the question here involved. As we recall the testimony, about 90% of these businesses antedated the passage of Ordinance No. 11. About 10% were constructed between it and Ordinance No. 66.

There was, among the witnesses who testified, a difference of opinion as to whether the property available in the immediate area for business was sufficient to meet the needs of the City. There was not as much available at the time of the passage of Ordinance No. 66 as there was when Ordinance No. 11 was passed because lands to the west of the City have since incorporated and have zoning ordinances. However, as to how much less is available we do not know.

■ With regard to the suitability of the subject property for residences or business, the testimony is in conflict. The opinion of some witnesses was that it was unsuitable for residences because of the location (particularly the Kennerly property) on Voss Road and because of its closeness to Katy Highway. With regard to the Kennerly property, some witnesses felt since it would lie on either side of Voss Road as Voss Road will be relocated, it was par-

ticularly suited for business and not residences. Other witnesses differed. Mr. Dunaway, a specialist in these matters, presented what he thought to be a feasible subdivision of the property for residential purposes that would meet the requirements of the zoning ordinance. We think there can be no doubt that the property is much more valuable for business purposes, but this alone is not the determining factor.

Some witnesses felt that the use of the property for business would cause a congestion of traffic along the busy Voss Road, though some felt no congestion would be caused if it was handled correctly. In any event, there would be the necessity for increased police activity in handling traffic. Too, there was evidence that with business there frequently comes increased crime, necessitating increased police surveillance. Too, hazard of fire increases.

It should be noticed that Mr. Reichert's land had been in his family for many years. The Kennerly property was purchased before the City was incorporated. There is nothing in the record showing that appellants have changed their position on the strength of their property having been zoned by Ordinance No. 11 for business. The property was in the same condition when each ordinance was passed. Appellants take the position that Ordinance No. 11 zoning their property for business was valid, and, there having been no change of conditions between its passage and the passage of Ordinance No. 66, zoning it for residential purposes, Ordinance No. 66 is arbitrary and invalid.

We are of the view that Ordinance No. 66 is valid.

It must, we think, be conceded that there was no substantial change in conditions between the enactment of the two ordinances. Appellants reason that if the first Ordinance was a valid exercise of the police power, before there can be a rezoning there must be a substantial change in conditions or the rezoning is arbitrary and unreasonable. We cannot agree.

■ It is well settled that a zoning ordinance is valid if at the time of its adoption the classifications it makes bear a reasonable relation to the health, morals and general welfare of the community. City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477. The mere fact, however, that a particular classification made of property may be reasonable does not mean that to have made a different classification would have been arbitrary and unreasonable. If it is fairly debatable as to whether a classification is reasonable, it will be upheld. City of Waxahachie v. Watkins, supra. Since it was fairly debatable, a different classification from that actually made would also be valid. The mere fact that the governing body made a choice of classification does not mean that all other classifications would have been arbitrary and unreasonable.

We are of the view that at the time Ordinance No. 11 was adopted zoning appellants' property for business the City could have validly chosen to zone it for residential purposes. We think it was fairly debatable as to which classification would have best served the general welfare of the community.

We need not analyze the testimony as we have recited the substance of it above. The facts, in our opinion, were substantially the same at the time each ordinance was adopted.

■ We are of the opinion that the governing body of a city which considers that it or its predecessor has made a mistake in the zoning of property may change the classification though no changes in conditions in the community have occurred, where no vested rights have accrued to the owner of the property rezoned. No vested rights had accrued to appellants here. Their property remains vacant land. Article 1011e, Vernon's Ann.Texas St., provides that there may be changes made by the governing body from time to time. The authority to change is not conditioned upon a change in conditions, between the time of

the passage of the original ordinance and the rezoning ordinance.

We have been cited no Texas case, and we have found none, that holds there must be a change in conditions after the enactment of a zoning ordinance before property covered by it may be rezoned. There are, however, cases from other states holding there need be no change.

In the case of Shemwell et al. v. Speck et al., 265 S.W.2d 468, 469, the Court of Appeals for Kentucky construed a statute not unlike ours in passing upon a fact situation not materially different from that here. A reclassification of property was attacked because there had been no change in conditions. The court, in upholding the amendatory ordinance, said:

"One contention of the appellants seems to be that a zoning ordinance can never be changed unless there has been a change of conditions since the adoption of the ordinance. This is a misconception of the law. The statute governing zoning in second-class cities, KRS 100.420, authorizes amendments or changes 'from time to time' with no requirement of a change of conditions. We think that a reconsideration or re-examination of the conditions in any area of the city may justify a change in the zoning ordinance as it affects that area, even though there has been no change of conditions in the area since the adoption of the original ordinance."

See also Mathis v. Hannan, Ky., 306 S.W. 2d 278.

In the case of Winslow v. Zoning Board of the City of Stamford, 143 Conn. 381, 122 A.2d 789, 794, the Supreme Court of Errors of Connecticut said:

"Of the remaining claims advanced by the plaintiffs, only one is worthy of discussion. It is that the board lacked jurisdiction to enact the amendment because there had been no change in the conditions surrounding the subject matter of the amendment from the time when the regulations were originally adopted in 1951. We have commented upon comparable claims raised in other cases. Parsons v. Town of Wethersfield, 135 Conn. 24, 29, 60 A.2d 771, 4 A.L.R.2d 330; Strain v. Mims, 123 Conn. 275, 287, 193 A. 754. In the former, we said at page 30 of 135 Conn., at page 773 of 60 A.2d, that 'ordinarily changes in zone should not be made unless new conditions have arisen or there have been substantial changes in the area, especially where a previous application for the change has been denied.' We did not intend thereby to place the legislative body of a municipality in a straight jacket. The considerations ordinarily precluding zoning boards of appeal from reversing themselves unless conditions have changed do not necessarily apply to the law-making agency of a community. For this reason we had previously limited the principle, as it was expressed in the Parsons case, supra, by making it applicable, if at all, only when a single property is, or a very few properties are, to be affected by the proposed amendment. Strain v. Mims, supra. Furthermore, the legislative body ought to be free to amend its enactments when, for example, the purpose is to revoke or modify provisions which time or application has shown to be unwise or subject to desirable change, or when, for added example, the body desires to correct a correctable injustice wrought by the existing ordinance."

Appellants have cited us the following Texas cases to support their contention that there must be a change in conditions: Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704; Davis v. Nolte, Tex.Civ.App., 231 S. W.2d 471; Barrington v. City of Sherman, Tex.CivApp., 155 S.W.2d 1008. We are unable to agree that any of these cases hold there must be a change of conditions. It is true that the court in the cases stated there

had been no changes between the original ordinance and the amendatory ordinance. However, in each case the amendatory ordinance effected "spot zoning" which is universally condemned.

 We will not notice specifically cases from other states cited us. It suffices to say that we have read them all and many more, and all of them are cases where the amendatory ordinance which was condemned really effected spot zoning. In many of them the court noted there had been no change in conditions between the passage of the zoning and the rezoning ordinances. Other cases have upheld amendatory ordinances because of change in conditions. However, these holdings do not mean that in all cases there must be a change in conditions. What they really mean is that the fact situation presented at the time of the passage of the amendatory ordinance will be examined, regardless of what conditions were when the original ordinance was passed, and if the rezoning can be fairly said to bear a reasonable relation to the promotion of the health, morals or general welfare of the community it will be upheld, otherwise it will not.

We are of the view that in classifying the subject property as residential the appellees did not act arbitrarily or unreasonably. It was, at the time of the passage of Ordinance No. 66, fairly debatable as to whether the health, morals and general welfare of the community as a whole were best to be served by classifying that part of appellants' property south of Briar Branch as residential. The choice in such situation must be that of the legislative body and not the courts.

 Appellants complain that reclassification was due to the political pressure of the residents of the City. Activity by the residents was present, as it almost always is. However, given a fact situation, such as we have here, that reasonably relates to the protection and promotion of the morals, health and general welfare of the community, the mere fact that community activity may have prompted the City Council to move to rezone is not fatal to the amendatory ordinance. The cases cited by appellants where political activity was present and the ordinance was condemned, were cases where the council's action was in fact arbitrary and unreasonable because of spot zoning.

The judgment of the Trial Court is affirmed.

COLEMAN, J., not sitting.