[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Carol Kaplan and Donald Blondin have taken the CT Page 3546 present appeal from the action of the defendant Zoning Commission of the City of Norwalk ("Commission") taken on June 19, 1991, which approved an application of the defendant Woman's Crisis Center ("WCC") for a special permit to operate a halfway house for abused women in a B residence zone in Norwalk, Connecticut.
The initial issue presented is whether the plaintiffs have demonstrated that they are aggrieved parties so as to entitle them to maintain the appeal. No person is entitled to set the mechanics of a zoning appeal in motion unless they can sustain their burden of pleading and proving that they are aggrieved by the decision from which the appeal has been taken. Fuller v. Planning and Zoning Commission, 21 Conn. App. 340, 342-343 (1990). "To be an aggrieved person, one must be affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision. As distinguished from the general interest such as is the concern of all members of the community, and the appellant must be specially injuriously affected as to property or other legal rights. Smith v. Planning Zoning Board, 203 Conn. 317, 321
(1987).
The plaintiff Carol Kaplan testified that she lives less than one thousand feet from the subject property and expressed her concerns with respect to property values and traffic congestion. The court finds that plaintiff Carol Kaplan has failed to satisfy her burden of proof and that the concerns expressed constitute generalizations and fears which do not prove that the appellant is an aggrieved person. Nader v. Altermatt, 166 Conn. 43, 59 (1974). The court further finds that Donald Blondin's land is located within a radius of 100 feet from the subject property and, accordingly, is statutorily aggrieved pursuant to provisions of General Statutes 8-8 (a)(1).
WCC applied to the Zoning Commission for a special permit for a halfway house to provide temporary housing for abused women and their children on property which is located at the end of Catalpa Street in Norwalk in a B residence Zone. Under the Building Zone Regulations, a halfway house, allowing a maximum of ten (10) persons, is allowed in a B residence Zone under a special permit. See, Section 118-340B(2)(h). The standards for the granting of special permits are set forth in Section 118-1450 of the Building Zone Regulations which provide as follows:
"C. Standard For Special Permits
 (1) A Special Permit may be granted after determination by the Commission that the proposed use or structure is in harmony with the general purpose and intent of these regulations and after consideration of the following conditions where applicable;
CT Page 3547
(a) The density of use and bulk of buildings.
 (b) "Stable traffic flow" shall mean that site-generated traffic shall not adversely affect pedestrian or vehicular safety, conflict with the pattern of highway circulation or increase traffic congestion to a level of service (LOS) considered unacceptable by the Commission.
 The Commission shall not approve developments which fail to maintain stable traffic flow unless provision has been made for the improvement of inadequate conditions.
(c) Availability of mass transit facilities.
(d) Availability and compatibility of utilities.
 (e) Adverse impact from noise, odor, fumes, dust and artificial lighting.
 (f) Signs of size and design that are in harmony with the neighborhood.
 (g) Adequacy of yards and open space, screening and buffering.
 (h) Impact on neighborhood properties, as compared to uses and structures permitted as a matter of right.
(i) Existing land use in the area.
(j) Proximity of community facilities.
 (k) Compliance with the Zoning Code and Master Plan of Land Use, effective date March 26, 1973, as amended.
 (l) Conservation of wetlands, watercourses and other ecologically valuable lands.
(m) No zoning violation exists on the property."
A special permit allows a property owner to use his property in a manner specially permitted by local zoning regulations and, thus, it is the zoning regulations, not the zoning authority which determine what uses may be allowed under special permit. A. P. W. Holding Corp. v. Planning and Zoning Board, 167 Conn. 182, 185
(1974); WATR. Inc. v. Zoning Board of Appeals, 158 Conn. 196, 200
(1969). When considering an application for a special permit, the Board acts in an administrative capacity and its function is to CT Page 3548 determine whether the applicant's proposed use is expressly permitted under the regulations and whether the standards set forth in the regulations are satisfied. Housatonic Terminal Corp. v. Planning and Zoning Board, 168 Conn. 304, 307 (1975). Upon appeal, a review of the decision of the local zoning authorities, acting within their administrative capacity, is limited to a determination as to whether the zoning authority acted illegally, arbitrarily or in abuse of the discretion vested in it. Tazza v. Planning and Zoning Commission, 164 Conn. 187, 191 (1972). The reviewing court examines the record to determine whether the conclusions of the Board are reasonably supported by the record and pertinent to the considerations that the authority is required to apply. Goldberg v. Zoning Commission, 173 Conn. 23, 25-26 (1977). DiMaria v. Planning and Zoning Commission, 159 Conn. 534, 540 (1970). The court, however, cannot substitute its own judgment for that of the zoning authority. Housatonic Terminal Corp. v. Planning and Zoning Board, supra at 306.
The plaintiffs claim that the action of the Zoning Commission was illegal, arbitrary and capricious and specifically asserts that the Commission failed to adequately consider the standards set forth in sub-paragraphs a, b, h and m of the "regulations". The court has reviewed the record and finds that the actions of the Commission is reasonably supported by the record.
The plaintiff claims that the Commission failed to adequately consider the density of use and bulk of the buildings and asserts that the neighborhood is composed of one family homes on a quiet suburban setting. The plaintiff also notes that "family" is defined in the regulations and, unless related by blood or marriage, no such family shall contain more than five persons.
However, a halfway house, as defined in the regulations, is allowed in a B residence zone. The building in question has six separate bedrooms only five of which will be utilized. The subject property is at the end of a dead-end street and is also triangular in shape. The property abuts, on one side, property that is presently being used for residential purposes. The property abuts a vacant lot owned by the City of Norwalk and a corner of the property abuts property currently being used as ground for a public school. The building itself will remain "as is". The shelter is to be utilized for abused women who are not allowed to have visitors. The residents of the shelter have an 8:00 p. m. curfew and there are no admissions allowed after 9:00 p. m. In addition, the children of the residents are supervised at all times. Accordingly, the court cannot conclude that the Commission failed to give proper consideration to sub-paragraph (a) of the Regulations.
The plaintiff also claims that the proposed use will CT Page 3549 significantly increase traffic and that the Commission failed to give proper consideration to sub-paragraph (b) of the Regulations. Plaintiffs also claim that the applicant requested and was granted a waiver of a traffic report in connection with the application. However, unless the question involved goes beyond the ordinary knowledge and experience of the members of the Commission, they may rely on their own conclusions without the aid of experts. Forest Construction Co. v. Planning and Zoning Commission, 155 Conn. 669,675 (1967); Gulf Oil Corp. v. Board of Selectmen, 144 Conn. 61,65-66 (1956).
There was evidence before the Commission that it was unusual for women staying at the shelter to have vehicles and that there are rarely more than two cars at the shelter at any one time. The house itself will only have two parking spaces, as to the lack of anticipated vehicular activity at the shelter. Again, the court cannot conclude that the Commission failed to give proper consideration to sub-section b.
Plaintiff also claims that the Commission failed to give adequate consideration to sub-paragraph h of the Regulation. However, the evidence before the Commission indicated that permits had been issued over several years to utilize the property as a rooming house. The record also contains the opinions of the corporation Counsel. There is a vested right to utilize the property as a rooming house. In view of the proposed utilization of the property under the special permit the court cannot conclude that the Commission failed to give adequate consideration to sub-paragraph h.
The plaintiff also claims that the provisions set forth in sub-paragraph (m) of the Regulations ("no zoning violation exists on the property") imposes an affirmative duty upon the Commission to determine that the property as utilized, prior to the issuance of the special permit, is such that no zoning violation exists. The plaintiff notes that the Director of Code Enforcement has indicated that if the property is used as a one-family dwelling, there is no zoning violation. However, inasmuch as access to the building could not be obtained, the Director could not make any statements with respect to zoning and building violations without an inspection of the interior of the residence to determine the purpose for which the property was being utilized. However, the Commission had before it the opinion of Corporation Counsel stating that the utilization as a rooming house exists as a nonconforming use. The utilization of the property as a halfway house would also remove any questions concerning any zoning violations. The plaintiff does not point to any existing zoning violation but claims that the affirmative duty imposed upon the Commission to find no zoning violations has not been adequately fulfilled. CT Page 3550
The plaintiff's position would require the Commission to deny the application on the basis of the possibility of the existence of an identified zoning violation even though the granting of the permit would remove any question as to the existence of a zoning violation. Zoning regulations should be construed in such a way as to render the enactment effective and workable and to reject any interpretations that would lead to unreasonable results. Maciejewski v. West Hartford, 194 Conn. 139, 151-152 (1984); Verrastro v. Sivertsen, 188 Conn. 213, 220-221 (1982); Muller v. Town Planning and Zoning Commission, 145 Conn. 325, 331 (1958); Planning and Zoning Commission v. Gilbert, 208 Conn. 696, 705-706
(1988).
The court, therefore, concludes that the record contains adequate support of the consideration by the Commission of the requirements imposed by Sections 118-1450 of the Building Zone Regulations. Accordingly, the appeal is dismissed.
RUSH, JUDGE