[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Julie L. Citrano, appeals from the decision of the defendant, the Trumbull planning and zoning commission, approving the application of the defendants Linda A. McCarthy and Bonnie L. Bieder (the applicants) for a resubdivision into two residential lots of Lot A, Map No. 5, Cedar Hills Estates, 45 Cal Drive, Trumbull, CT (the subject premises). Also named as a defendant is Linda M. Lungi, who is the town clerk of the town of Trumbull.
The commission acted pursuant to § 8-26 of the General Statutes and section 7 of chapter IV of the land subdivision regulations of the town CT Page 15239 of Trumbull. The plaintiff appeals pursuant to § 8-8 (b) of the General Statutes.
 BACKGROUND
On April 30, 1997, the applicants filed an application with the planning and zoning commission seeking approval to resubdivide the subject premises. (ROR, Item 1.) As one of the proposed lots of the resubdivision plan had only 139.62 feet of frontage, the resubdivision also required a variance of article III, section 1 of the Trumbull zoning regulations, which provides that the minimum road frontage shall be 150 feet. (Complaint, ¶¶ 6, 7.) On May 21, 1997, the commission conducted a public hearing on the resubdivision application. (ROR, Item 3.) During this hearing, the applicants submitted to the commission an alternate plan which would create two conforming lots on the subject premises without the need for a variance for frontage. (ROR, Item 3, pp. 2-3.) The alternate plan had been submitted in response to a handout from the town's engineering department which suggested to the commission that it should request the developer to submit such an alternate plan. (ROR, Item 3, p. 2, ¶ 2; Item 8, pp. 1-2.) The stated reason for the alternate plan was to provide the town with a turn-around for plows and other types of vehicles so that they would not need to use the driveway of one of the houses, and to provide a space for the town to stack snow. (ROR, Item 3, p. 2; Item 8, p. 2.)
The alternate plan provided for the deeding of a portion of the property to the town so that a so called "hammerhead turn-around" could be created, which would add frontage to the lot containing insufficient frontage. (ROR, Item 3, p. 2.) At the hearing, the alternate plan was presented in its entirety to the commission, but at the request of the neighboring property owners the public hearing was continued to June 18, 1997, to allow them the opportunity to present expert testimony concerning the application. (ROR, Item 3, pp. 20-21.) On June 7, 1997, the commission published the first notice of the continued hearing in a local newspaper, and on June 13, 1997, it published the second notice of the continued hearing. (ROR, Item 7.) The notices read: "97-17) Resubdivision Lot A, (and Alternate version with 2 Lots) Map No. 5 Cedar Hill Estates, 45 Cal drive, Trumbull, CT, prepared for Bonnie Bieder and Linda McCarthy, 2 Lots S/S Cal Drive, 300' West of Haviland Dr., HEARING CONT'D FROM MAY 21, 1997." (ROR, Item 7, Certificates of Publication.) On June 18, 1997, the public hearing before the commission continued. That same day, the commission voted to approve the alternate resubdivision plan with conditions. (ROR, Item 10, p. 1; Item 11.) Earlier that day, the zoning board of appeals had approved the application for a variance for the required road frontage for one of the lots. (ROR, Item 8, p. 1; Item 9, p. 331.)[1] During both the May 21 and the June 18 hearings, strong CT Page 15240 objections were voiced by the neighbors concerning the commission's consideration of the alternate plan. (ROR, Item 3, pp. 7-13, 17, 18; Item 8, pp. 12-16.) The plaintiff now appeals claiming that, in approving the alternate resubdivision plan, the commission acted illegally, arbitrarily, and in abuse of the discretion vested in it.
 JURISDICTION
General Statutes § 8-8 governs appeals taken from a planning and zoning commission to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Cardoza v. Zoning Commission, 211 Conn. 78, 82, 557 A.2d 545 (1989).
A. Aggrievement
"The plaintiff can demonstrate statutory aggrievement pursuant to Section 8-8 (a)(1) if she can demonstrate that her property abuts or is within 100 feet of any portion of the land involved in the decision of the commission." (Internal quotation marks omitted.) McNally v. ZoningCommission, 225 Conn. 1, 6, 621 A.2d 279 (1993). "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of [the] plaintiff's appeal." Jolly, Inc. v. Zoning Boardof Appeals, 237 Conn. 184, 192, 676 A.2d 831 (1996). The plaintiff alleges that she owns real property that abuts the subject premises owned by the applicants, and, therefore, that she is an aggrieved person for purposes of this appeal. (Complaint, ¶¶ 1-2.)
In the accompanying file pocket No. 345401) there is evidence in the form of a deed that the plaintiff has record title to the property which she claims abuts the subject premises. The evidence does not establish, however, that her property abuts the subject premises. The evidence in the record shows that Cal Drive runs between the plaintiff's property and the subject premises. (ROR, Items 1a, 1b, 1c, 3a, 3b, 8g, 8h) Therefore, the properties do not abut. See Muller v. Town Plan Zoning Commission,145 Conn. 325, 329, 142 A.2d 524 (1958); Parsons v. Wethersfield,135 Conn. 24, 29, 60 A.2d 771 (1945). The same evidence from the record proves, however, that the properties' frontages are within 100 feet of each other.[2] Therefore, the plaintiff has demonstrated statutory aggrievement pursuant to 8-8 (a)(1).
B. Timeliness of the Appeal and Service of Process
An appeal shall be commenced by service of process within fifteen days from the date that the commission's notice of decision is published. See General Statutes § 8-8 (b). Furthermore, it shall be commenced by CT Page 15241 leaving the process with, or at the usual place of abode of, the chairman or clerk of the planning and zoning commission, and by leaving a true and attested copy with the clerk of the municipality. See General Statutes § 8-8 (e), now § 8-8 (f).
In the present case, notice of the decision was published on July 1, 1997. (ROR Item 11.) On July 15, 1997, the plaintiff served Joan Gruce, planning and zoning administrator and clerk, and Linda Lungi, Town Clerk. (Sheriff's Return.) The appeal was commenced in a timely fashion by service of process on the proper parties.
 SCOPE OF REVIEW
"It is well established . . . that [i]n exercising its function of approving or disapproving a subdivision plan, the planning board acts in an administrative capacity. In passing upon a plan, its action is controlled by the regulations adopted for its guidance." (Internal quotation marks omitted.) Timber Trails Corp. v. Planning ZoningCommission, 222 Conn. 380, 387, 610 A.2d 620 (1992). "If the regulations in effect at the time authorized the commission to approve [the alternate plan with the hammerhead turn-around] then the commission must be deemed to have exercised properly its authority to `modify and approve' the application within the meaning of [General Statutes] § 8-26. . . ." Id., 388.
"The . . . trial court [has] to decide whether the board correctly interpreted [the regulations] and applied [them] with reasonable discretion to the facts." Irwin v. Planning Zoning Commission,244 Conn. 619, 627-28, 711 A.2d 675 (1998). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Id., 628. "[W]here a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision. . . . Where, however, the zoning commission fails to present a formal collective statement of reasons the court must search the entire record to find a basis for the commission's decision. . . . (Citations omitted; internal quotation marks omitted.) West Hartford Interfaith Coalition v.Town Council, 228 Conn. 498, 513-14, 636 A.2d 1342 (1994). "[I]n searching the record, the trial court may rely on any reason culled from the record which demonstrates a real or reasonable relationship with the general welfare of the community in concluding that the board's decision should be upheld." (Internal quotation marks omitted.) ProtectCT Page 15242Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planningand Zoning Commission, 220 Conn. 527, 545 n. 15, 600 A.2d 757 (1991).
"Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Citations omitted; internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198,206, 658 A.2d 559 (1995).
 DISCUSSION
As a preliminary matter, in the present case the commission did not give a formal collective statement of its reasons for approving the alternate subdivision plan. Therefore, the court must search the entire record for the commission's reasons. In searching the record, the court finds an expression of concern that specifically relates to the alternate plan including the hammerhead turn-around. In the transcript of the May 21, 1997 public hearing, Mr. Buturla, the engineer representing the applicants, stated: "[W]ith this alternate plan we would construct a hammerhead type turn-around at the end of Cal Drive. This would provide plows and other types of vehicles an access way to make a turn without using the driveway of the house No. 45. Again, on the handout from the Engineering Department it was suggested to the Commission that you would request the developer to do so, and on this alternate plan we presented it as something that we will do." (ROR, Item 3, p. 2.) Linda McCarthy, one of the applicants, further stated that the turn-around "was suggested by Brian Smith [the assistant town engineer] as something that might be needed in that area, at the end of this road." (ROR, Item 3, p. 6.) At the continued public hearing, June 18, 1997, Buturla explained: "[W]e submitted an alternate plan which presented what the Commission wanted, a hammerhead turn-around at the end of the existing dead-end. . . . Again, our alternate plan before the Commission would be to build a hammerhead type turn-around in order to, in order for the Town to plow snow out of places and stack snow." (ROR, Item 8, pp. 1-2.)
The record reveals that the town engineer, Brian Smith, was present at these hearings, and there is no evidence that there was any disagreement with, or dispute regarding, the above quoted statements.[3] The record indicates that the town's engineering department and the commission intended to require a turn-around at the end of Cal Drive for the purposes of enabling plows and other types of vehicles to make a turn without using the driveway of any of the houses, and for snow to be stacked out of the way.
A. Whether the Commission Violated the Procedures Set Forth in Chapter IVCT Page 15243 of the Trumbull Land Subdivision Regulations by Accepting the Alternate Plan at the May 21, 1997 Hearing
Chapter IV of the regulations provides for the procedure to be followed in submitting an application for a subdivision. It includes, inter alia, provisions regulating the form of the application (section 1),[4] the notice of a public hearing (section 6),[5] and the approval or disapproval of a plan (section 7).[6]
The plaintiff argues that because notice to the public of the May 21, 1997 hearing contemplated only the original plan and application for resubdivision, consideration of the alternate plan at that hearing constituted a procedural violation.[7] The plaintiff also argues that she and other neighbors were not afforded proper and appropriate notice of the subject matter of the hearing before the commission on May 21, 1997, and were therefore unable to prepare comments directed to the alternate plan prior to the meeting.[8] Finally, the plaintiff argues that by accepting the second application at that hearing, the commission violated the requirements of chapter IV, section 1(b) of the Trumbull land subdivision regulations. The plaintiff premises these arguments on her assumption that the alternate plan constituted a second, and wholly new, application. The defendant has not briefed these issues.
In Lauver v. Planning and Zoning Commission, 60 Conn. App. 504,760 A.2d 513 (2000), the appellate court considered whether an amended application was separate and distinct from an original application for purposes of requiring separate legal notice. Id. 508. The court upheld the trial court's finding that the applications were distinct because the description of the subject property in the amended application was different, the original application was not on the agenda of the hearing scheduled for the original application, no action was taken on the original application, and there could have been no continuance of the original application because no action was taken on it. Id., 509.
It is submitted that, in the present case, the submission of the alternate plan did not constitute the submission of a separate and distinct application. The description of the subject premises remained unchanged, and the subdivision still related to the same subject premises. (ROR, Items 1, 2, 7.) The record further provides that the original application was on the agenda for both the May 21 and the June 18 hearings, (ROR, Items 2, 4, 7, 9.), and that the commission did taken action on the original application. (ROR Items 5, 6.)
In support of her contention that the commission's consideration of the alternate plan at the May 21, 1997 hearing constituted a procedural violation, the plaintiff argues that the subdivision plans originally CT Page 15244 submitted were not scrutinized by the commission at that hearing. She argues further that any work by the town engineer in analyzing those plans was worthless as a result of the consideration of the alternate plan at that hearing.[9] The transcript of the May 21 hearing reveals, however, that the commission considered all issues that had arisen in the context of the original resubdivision application, and that it did not only consider the new issues raised by the addition of a hammerhead turn-around at the end of Cal Drive. (ROR, Item 3.)[10] Furthermore, the alternate plan did not provide for any alteration of the lot lines, nor the location of the house to be built, or the location of the proposed new septic area and well. (ROR, Item 1c, 8g and 8h.) Therefore, the analysis of the town engineer was still applicable and not worthless.
The only change which the alternate plan introduced was the hammerhead turn-around at the end of Cal Drive. As mentioned previously, the town's engineering department and the commission suggested a turn-around for the purposes of enabling plows and other types of vehicles to make a turn without using the driveway of any of the houses, and for snow to be stacked out of the way. "Section 8-26 [of the General Statutes] authorizes a planning and zoning commission to modify and approve a subdivision application. . . ." (Internal quotation marks omitted.)Timber Trails Corp. v. Planning Zoning Commission, supra, 222 Conn. 387. In addition, section 1 of chapter IX of the Trumbull subdivision regulations gives the commission additional discretionary powers to "make such recommendations as shall seem to it necessary to preserve and enhance scenic values, the environmental quality, and conditions making for excellence of residential, commercial or industrial development, as the case may be." Accordingly, the court finds that the alternate plan did not introduce a separate and distinct application, but merely constitutes a modification of the original application.
Because the court finds that the alternate plan did not introduce a separate and distinct application, the court also finds that the plaintiff and her neighbors were afforded proper notice of the subject matter before the commission on May 21, 1997. Accordingly, the commission's consideration of the alternate plan at that hearing did not constitute a procedural violation. The plaintiff's concern that she was unable to prepare comments directed to the alternate plan prior to the May 21, 1997 hearing was addressed by the continuance of that hearing to June 18, 1997, at the request of the neighbors.[11] (ROR, Item 3, pp. 11-12, 20.)
The plaintiff also argues that General Statutes § 8-26 requires the commission to act upon only one application at a time, but here, the commission never disposed of the initial application before it considered CT Page 15245 the second application, contrary to the requirements of § 8-26.[12]
The court's finding that the alternate plan did not introduce a separate and distinct application disposes of this argument as well.
Accordingly, the court will not sustain the appeal on the grounds raised and discussed above.
B. Whether At the June 18, 1997 Hearing, the Commission Considered the Alternate Plan, and Rendered a Decision Thereon, Without Proper Notice to Neighbors and Others
The plaintiff argues that the commission improperly considered and approved the alternate plan because it gave the plaintiff and other neighbors no indication that the alternative plan would be the subject matter of the June 18, 1997 hearing. The defendant argues that it published a clear and explicit notice of the evidence it would consider and the actions it might take.
The legal notice of the continued hearing on June 18, 1997, provided: "97-17) Resubdivision Lot A, (and Alternate version with 2 Lots) Map No. 5 Cedar Hill Estates, 45 Cal Drive, Trumbull, CT, prepared for Bonnie Bieder and Linda McCarthy, 2 lots S/S Cal Drive, 300' West of Haviland Dr., HEARING CONT'D FROM MAY 21, 1997. . . . Plans for the above-listed applications are on file in the office of the Planning and Zoning Commission for public inspection." (ROR, Item 7, Certificates of Publication.)[13]
"Whether failure to give notice affects subject matter jurisdiction depends on who is to be notified. . . . When the notice required . . . is constructive notice to the general public by means of legal advertisement, failure to issue such notice properly is a defect implicating subject matter jurisdiction." (Internal quotation marks omitted.) Koskoff v. Planning Zoning Commission, 27 Conn. App. 443,446, 607 A.2d 1146, cert. granted, 222 Conn. 912, 608 A.2d 695 (1992) (appeal withdrawn November 10, 1992). "[N]otice of a hearing is not required to contain an accurate forecast of the precise action which will be taken on the subject matter referred to in the notice. It is adequate if it fairly and sufficiently apprises those who may be affected of the nature and character of the action proposed, so as to make possible intelligent preparation for participation in the hearing." (Internal quotation marks omitted.) Danseyar v. Zoning Board of Appeals,164 Conn. 325, 330, 321 A.2d 474 (1973). In the present case, it is clear from the public notice that the original plan as the alternate plan would be the subject matter of the June 18, 1997 hearing. Thus, it fairly apprised the plaintiff, her neighbors and others interested of the nature and character of the action proposed. Therefore, consideration of the CT Page 15246 alternate plan at the June 18, 1997 hearing was given with proper notice to the plaintiff, her neighbors and other interested parties.
The plaintiff also argues that the entire meeting of June 18, 1997 concerned the alternate resubdivision plan. A careful reading of the transcript of that hearing reveals, however, that the commission considered all issues that had arisen in the context of the original resubdivision application, and that it did not only consider the issues raised by adding a hammerhead turnaround at the end of Cal Drive. (ROR, Item 8.) Thus, for example, issues that were discussed include wetlands soil types, the location of the well and septic systems, percolation test results, the steepness of the slopes on Lot 2, drainage and run-off issues, and the requirement of a bond.
Accordingly, the court will not sustain the appeal on this ground either.
C. Whether the Alternate Plan Violates Chapter VII, Section 1(c) of the Trumbull Land Subdivision Regulations
The plaintiff argues that the alternate plan violates chapter VII, section 1(c) of the land subdivision regulations,[14] because the portion of Cal Drive adjacent to resubdivided Lot A has a street gradient exceeding 12%. The commission did not make any express findings on, nor has it briefed, this particular issue.
Subsection 1(c) of chapter VII provides that the maximum gradient for any street in residential zones shall not exceed 12%. The concept of "grade" or "gradient" is defined as "[t]he number of feet rise in one hundred feet of horizontal distance expressed as percent." (ROR, Item 13, Chapter II, Section 2(f).) The court must therefore consult the maps in the record, measure out a distance of one hundred feet horizontally adjacent to lot one, and then read from the existing contour line on the map what the difference in elevation is over that distance.
From the map that displays the alternate grading plan; (ROR, Item 8g); the court is able to measure a horizontal distance of 100 feet at various elevations. A distance of approximately 100 feet is found from an elevation of 440 feet to an elevation of 450 feet. This yields a gradient of 10 percent. A distance of approximately 100 feet is found from an elevation of 442 feet to an elevation of 452 feet. This also yields a gradient of 10 percent. A distance of approximately 100 feet is found from an elevation of 456.4 feet to an elevation of 444.8 feet. This yields a gradient of 11.6 percent. Finally, a distance of approximately 80 feet is found from an elevation of 450 to an elevation of 460 feet. This yields a gradient of 12.5 percent. CT Page 15247
Thus, only one result yields a percentage above the permissible 12 percent. The measurements for this gradient, however, would have been the same under the original plan of the subdivision application, and represent, in fact, the situation as it has existed for many years on Cal Drive. Furthermore, the alternate plan deals with this problem by proposing a change in the existing contour lines above the elevation of circa 455 feet. The new contour lines will yield a gradient that complies with subsection 1(c) of Chapter VII. (ROR, Item 8g.)
Accordingly, the court will not sustain the appeal on this ground either.
D. Whether the Trumbull Land Subdivision Regulations Permit or Provide for a Hammerhead Turn-around on Dead End Streets
The plaintiff asserts that the Trumbull land subdivision regulations do not permit or provide for a hammerhead turn-around, and that nowhere in the regulations is the phrase "hammerhead" found. (ROR, Item 13.) She argues that chapter V, section 4 of the regulations, which governs dead end streets, clearly provides that a dead end turn-around is to be circular, and not in the shape of a hammerhead.[15] The plaintiff further argues that such a hammerhead turn-around fails to meet the minimum radius requirements set forth in chapter V, section 4.
The alternate plan introduced a hammerhead shaped turn-around at the end of Cal Drive. Cal Drive is a dead-end-street because it has no outlet at one end. Chapter II, section 2, of the Trumbull land subdivision regulations, which defines the terms used in the regulations, does not contain a definition of the word "hammerhead," and the regulations do not contain any provision which uses that term. The term "cul-de-sac" is defined in the regulations as "a turnaround on a dead-end-street."[16]
"Our rules of statutory construction apply to administrative regulations." (Internal quotation marks omitted.) Vitti v. Allstate Ins.Co., 245 Conn. 169, 178, 713 A.2d 1269 (1998); see also East Lyme v.Waddington, 4 Conn. App. 252, 259 n. 2, 493 A.2d 903, cert. dismissed,197 Conn. 811, 499 A.2d 61 (1985) (full panoply of principles of statutory construction available in construction of land use regulations). Although the Trumbull definition of "cul-de-sac" is more specific than the conventional definitions,[17] it does not set out what the shape of a turnaround should be, and the term "turn-around" itself remains undefined. "Courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them." (Internal quotation marks omitted.) State v. Baker, 195 Conn. 598, 602, 489 A.2d 1041 (1985). If the commission, in adopting regulations, had wanted to limit the shape of a cul-de-sac or turn-around to a circle, it could have done so by adding the adjective CT Page 15248 "circular." The traditional practice is to presume "that the legislature is capable of providing explicit limitations when that is its intent." (Internal quotation marks omitted.) Rumbin v. Utica Mutual Ins. Co.,254 Conn. 259, 266, 757 A.2d 526 (2000); see, e.g., Peterson v. ReddingPlanning Commission, Superior Court, judicial district of Danbury at Danbury, Docket No. 302916 (December 2, 1992, Riefberg, J.). In the present case, the commission has not limited a turn-around to any particular shape in its regulations, and it is therefore entitled to interpret section 4 of chapter V as allowing a turn-around that is non-circular in shape.[18]
Although the court finds that a non-circular turn-around is permitted by section 4 of chapter V, that section also provides that all dead-end streets "shall be equipped with a turn-around roadway at the closed end with minimum radius of 50 feet from the center to the outside edge of the right-of-way." The use of the term "minimum radius" suggests that, to determine the distance from the center of the turn-around to the right-of way, a circle must be drawn such that its arc touches the right-of-way that is nearest to the center. The distance from the center to the nearest right-of-way is the radius, and this must be at least 50 feet. The plaintiff argues that even if a hammerhead turn-around is permitted under the regulations, the turn-around in this case fails to meet the minimum radius requirements set forth in chapter V, section 4.
The court has closely inspected the maps in the record which depict the hammerhead turn-around at the end of Cal Drive. (ROR, Items 3b, 8g, 8h.) From the center of the regular polygon that forms the hammerhead turn-around to the nearest right-of-way is 1/2 to 5/8 of an inch. (ROR Items 3b, 8g.) The scales of maps 3b and 8g provide that one inch equals forty feet on those maps. This makes the distance from the center to the nearest right-of-way, the radius, about twenty to twenty-five feet. Therefore, the turn-around does not meet the minimum radius requirement of fifty feet contained in section 4 of chapter V of the land subdivision regulations. Thus, the court must sustain the appeal on this ground.
 CONCLUSION
The alternate plan did not constitute a separate and distinct application. The plaintiff and her neighbors were afforded proper notice of the subject matter of both hearings, and that the commission's consideration of the alternate plan did not constitute a procedural violation. Furthermore, the commission is entitled to interpret section 4 of chapter V of the regulations as allowing a turn-around that is non-circular in shape, and that the application does not violate the maximum gradient allowance for residential zones. CT Page 15249
However, the appeal is sustained on the ground that the turn-around does not meet the minimum radius requirement of fifty feet contained in section 4 of chapter V of the land subdivision regulations.
BRENNAN, JR., J.