[No. 2661–2.   Division Two.   August 2, 1978.]

WASHINGTON STATE FERRIES, *Respondent,* v. INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS, ET AL, *Respondents,* STANLEY ROBICHAUX, *Appellant.*

*Glenn Abraham,* for appellant.

*Slade Gorton, Attorney General, Robert McIntosh, Assistant, Keith R. Baldwin,* and *Reaugh, Hart, Allison, Prescott & Davis,* for respondents.

PEARSON, C.J.—Stanley Robichaux appeals from a decision by the Marine Employees Commission (MEC)[1] which denied him certain seniority rights as an employee in the state ferry system. The agency's decision was upheld by the Superior Court. We affirm.

---

[1] The functions of the Marine Employees Commission have subsequently been transferred to the Public Employment Relations Commission. *See* RCW 47.64.010(2); RCW 41.58.005.

The facts in this case are uncontested. Robichaux was employed by Olympic Ferries, Inc., as a master, with a seniority date of July 18, 1952, on the Port Townsend–Keystone ferry run. In 1974 Olympic Ferries ceased operation by surrendering its certificate of convenience and selling its ferry boat. Washington State Ferries entered into possession of the ferry docks and facilities, and began operating a ferry service between Port Townsend and Keystone. Robichaux and three other officers, previously employed by Olympic Ferries, were hired by the State to man the new ferry. Subsequently Washington State Ferries acquired the Port Townsend ferry dock and terminal and the Keystone Harbor and Boat Basin ferry dock and terminals by condemnation.

When the Port Townsend–Keystone ferry operation was shut down for the winter in 1974, Robichaux and his fellow officers were assigned other duties in the state ferry system based on seniority. Washington State Ferries gave Robichaux a seniority date of July 18, 1952, which placed him 14th on a list of 60 masters. The State determined Robichaux's seniority on the basis of RCW 47.64.080, which states:

> All employees employed at the time of the acquisition of any ferry or ferry system by the toll bridge authority shall have seniority rights to the position they occupy aboard said ferries or ferry system. In the event of curtailment of ferry operations for any reason, employees shall be relieved of service on the basis of their duration of employment in any ferry or ferry system acquired by the toll bridge authority.

The international Organization of Masters, Mates, and Pilots, West Coast and Pacific Region, Inland Division, Branch 6 (Union) contended that RCW 47.64.080 was inapplicable. They sought and received a hearing before the MEC. *See* RCW 47.64.040. MEC concluded that Washington State Ferries had not acquired a "ferry or ferry system" within the meaning of RCW 47.64.080 because

Olympic Ferries had "surrendered its certificate of convenience and necessity and sold its boat" prior to the time the State entered into possession of the docks. MEC ordered that Robichaux's seniority date be determined in accordance with the bargained agreement between the union and Washington State Ferries.

Robichaux obtained judicial review of the agency's order pursuant to the state administrative procedures act (APA). The Superior Court, applying the "clearly erroneous" standard, affirmed the MEC. *See* RCW 34.04.130(6)(e).

■■ The lone issue on appeal is whether Stanley Robichaux was an employee "employed at the time of the acquisition of any ferry or ferry system" by Washington State Ferries. An appellate court accepting an appeal from an agency decision applies the appropriate standard of review directly to the record of the administrative proceedings and not to the findings or conclusions of the superior court. *Standow v. Spokane,* 88 Wn.2d 624, 637, 564 P.2d 1145 (1977). Unless the agency's decision involves only questions of fact, the proper standard of review is the "error of law" standard. RCW 34.04.130(6)(d); *see Department of Revenue v. Boeing Co.,* 85 Wn.2d 663, 538 P.2d 505 (1975); *Daily Herald Co. v. Department of Employment Sec.,* 17 Wn. App. 865, 870, 566 P.2d 929 (1977). Here the resolution of the case turns on the meaning of a statutory term, consequently our concern is whether there has been an error of law. *See Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 283, 525 P.2d 774 (1974).

■ It is clear that Washington State Ferries made an "acquisition" when it took over Olympic Ferries' terminal facilities, first by agreement and later by condemnation.[2] Obtaining title by condemnation constitutes an "acquisition" as much as obtaining title by outright purchase. *See Stevens v. New York, N.H. & H. Ry.,* 83 Conn. 603, 610, 78 A. 440, 442 (1910).[3] However, it is equally apparent that

---

[2] For purposes of this case, it is immaterial that the condemnation settlement took place nearly 1 year after MEC's order.

[3] *See also* RCW 47.60.010, which states:
"The Washington toll bridge authority hereinafter referred to as the authority

Washington State Ferries did not acquire a "ferry system." The term "ferry system" is not defined by statute or case law, but common sense tells us that ferry terminal facilities alone do not constitute a "system" because all of the essential components for operating a ferry service are not present. Therefore, we agree with the MEC's order insofar as it determined that Washington State Ferries did not acquire a ferry system.

The next question is whether Washington State Ferries acquired a "ferry" as that term is used in RCW 47.64.080. The MEC concluded that it had not; but the record before us shows that the MEC and the superior court did not take into account the statutory definition of "ferry" found in RCW 47.64.010. The MEC simply found that no "ferry" was acquired because the State did not purchase Olympic Ferries' boat. Such a conclusion is too narrow because it ignores the statutory framework within which MEC must operate. *See Cole v. State Utils. & Transp. Comm'n,* 79 Wn.2d 302, 485 P.2d 71 (1971).

RCW 47.64.010 states:

Words and phrases used in this chapter shall have the meaning in this chapter ascribed to them except where, from the context thereof, they shall clearly have a contrary meaning:

---

is hereby authorized to *acquire* by lease, charter, contract, purchase, *condemnation* or construction, and partly by any or all of such means, and to thereafter operate, improve and extend, a system of ferries on and crossing Puget Sound and any of its tributary waters and connections thereof and connecting with the public streets and highways in the state, such system of ferries to include such boats, vessels, wharves, docks, approaches, landings, franchises, licenses, and appurtenances, as shall be determined by the authority to be necessary or desirable for efficient operation of the ferry system and best serve the public. The authority may in like manner *acquire* by purchase, *condemnation* or construction and include in such ferry system such toll bridges, approaches and connecting roadways as may be deemed by the authority advantageous in channeling traffic to points served by the ferry system. In addition to the powers of acquisition herein granted the authority is hereby empowered to enter into any contracts, agreements or leases with any person, firm or corporation and to thereby provide, on such terms and conditions as it shall determine, for the operation of any ferry or ferries or system thereof, whether acquired by the authority or not." (Italics ours.)

(3) "Ferry" shall mean any ferry, ferry system, *wharves, terminals* constructed or acquired under the authority of the Washington toll bridge authority;

(Italics ours.)

█ The context in which the term "ferry" is used in RCW 47.64.080 does not clearly require any definition be ascribed to that term other than the definition supplied by the statute above.[4] Consequently, it must be said that Washington State Ferries acquired a "ferry" within the meaning of RCW 47.64 when it acquired Olympic Ferries' terminals.

██ Based on the foregoing, we would have to reverse the MEC's order were it not for subsection 4 of RCW 47.64.010, which reads:

"Employee" shall mean any person employed aboard ferries, wharves, or terminals acquired or constructed under the authority of the Washington toll bridge authority.

Reading this definition in conjunction with the main statute under discussion, RCW 47.64.080, we discern a legislative intent to protect the seniority rights of only those persons who are employed on the particular facility acquired, *i.e.*, the "ferry" or "ferry system." Appellant Robichaux was not employed on Olympic Ferries' terminals; therefore, he does not have any seniority rights aboard the "ferry" acquired.[5]

---

[4] Where the legislature intended to refer to a ferry boat only, it generally chose the term "vessel" or "boat." *See, e.g.,* RCW 47.64.070, RCW 47.60.010, RCW 47.61.010; *but see* RCW 47.60.220–.240.

[5] The seniority rights of Olympic Ferries' terminal employees were not at issue in this appeal. We do not purport to adjudicate the merits of that controversy, if it exists, in this appeal. We note that RCW 47.64.080 protects "[a]ll employees *employed at the time* of the acquisition of any ferry or ferry system." (Italics ours.) As stated above, Olympic Ferries surrendered their certificate of convenience and ceased operation prior to the start of the state's ferry service. *See* RCW 47.60.282, .283. Whether Olympic's employees were still employed at the time of the acquisition of the terminal is a mixed question of fact and law, not discussed by MEC.

Where the facts are uncontradicted, and otherwise appear trustworthy, an appellate court may affirm the agency's order on a ground not called to the attention of the agency or the Superior Court.

*Haining v. Department of Social & Health Servs.*, 19 Wn. App. 929, 931, 579 P.2d 372 (1978).

For the reasons set forth above, the order of MEC was correct, and accordingly is affirmed.

SOULE and RINGOLD, JJ., concur.