## GATZ INSURANCE AGENCY, INC. et al *v.* Martha CHAMBERLAIN

79-280                                      590 S.W. 2d 283

Opinion delivered December 10, 1979
(In Banc)

*Herrn Northcutt* and *Frierson, Snellgrove & Laser,* by: *G. D. Walker,* for appellants.

*Dennis Zolper,* for appellee.

GEORGE ROSE SMITH, Justice. This is a claim for unemployment compensation. The various administrative agencies denied the claim, finding that the claimant voluntarily quit her job without good cause connected with her work. Ark. Stat. Ann. § 81-1106 (a) (Supp. 1979). The circuit court reversed, sustaining the claimant's contention that her claim falls within an exception in the same subsection, providing that "no claimant shall be disqualified under this subsection if he has voluntarily left his last work to accompany, follow, or join the other spouse in a new place of residence." *Id*.

On July, 7, 1978, the claimant, a resident of Jonesboro, voluntarily left her employment in order to marry Robert J. Chamberlain and move to Indiana, where Chamberlain was living. The couple were married in Tennessee three days later, on July 10, and took up their residence in Indiana.

Even construing the statute liberally, we cannot agree with the circuit judge's extension of its language to reach this case. A spouse, by definition, is a married person, a husband or wife. This claimant was not married when she left her job and thus could not have quit to accompany, follow, or join "the other spouse." The statute as written has *certainty,* which the legislature presumably considered to be desirable; it applies *only* to married persons. But if the statute is interpreted to apply also to a single person who intends to get married three days later, it might equally well apply to one who intends to get married three weeks or three months later. A rule of liberal construction does not mean that the courts are free to substitute vagueness for precision.

The claimant also states that she was "technically" still employed at the time of her marriage, because she was entitled to two weeks' accrued vacation pay when she quit. The record, however, does not even raise an issue of fact on this point, much less establish the claimant's contention. There is no indication whatever that the claimant decided to go on a vacation without terminating her employment. To the contrary, she left for the specific purpose of getting married and moving to another state. She was voluntarily unemployed and free to accept another job on the day she left Jonesboro. The administrative agencies did not find, and

indeed had no basis for finding, that the claimant was still employed by the appellant when she was married three days after she left her work.

Reversed.

HARRIS, C.J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I cannot agree with my brothers in this opinion. The only question is whether appellee quit her job to join her husband. The trial court was absolutely correct in holding that she quit to join her husband. When she left her employment it was for the purpose of joining Robert J. Chamberlain. When she arrived in Indiana he was her husband. It is true that for two days following her last day of work she was not married. However, when she arrived at her new home in Indiana she joined her husband, the express purpose of her leaving her job. It is entirely too technical to disqualify her because she did not marry at least one day before leaving her employment.

We have always construed this statute to confirm to the intent of the General Assembly, until this time anyway, that being to protect people who are unemployed. In the present case we have turned the other direction and given assistance to the cause of increasing the number of unemployed who cannot draw unemployment benefits. In my opinion, the common-sense interpretation of this statute would allow this lady to draw benefits.